Carol J. WALTON, on behalf of herself
and on behalf of others
similarly situated

v.

EATON CORPORATION.

Carol J. WALTON, Appellant,

v.

EATON CORPORATION.

No. 76–1707.

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1977.

Submitted for Rehearing In Banc under
Third Circuit Rule 12(6) May 12, 1977.

Decided July 18, 1977.

As Amended Aug. 10 and Aug. 12, 1977.

---

Mark B. Segal, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Andrew S. Price, H. Thomas Felix, II, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for appellee.

Argued Jan. 10, 1977.

Before GIBBONS and GARTH, Circuit Judges, and COHEN,* District Judge.

Submitted for Rehearing *in banc* under Third Circuit Rule 12(6) May 12, 1977.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal arises from consolidated employment discrimination actions which the plaintiff, Mrs. Carol J. Walton, initiated against her former employer, the Eaton Corporation. Mrs. Walton, a black female, alleged that Eaton had discriminated against her because of her race and sex and that it had therefore violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. §§ 1981 and 1983. After a non-jury trial, the district court made detailed findings of fact and

* Mitchell H. Cohen, United States District Court Judge for the District of New Jersey, sitting by designation.

entered judgment in favor of Eaton. Mrs. Walton appealed.

On appeal, Mrs. Walton argued that the judgment of the district court should be reversed for five reasons. She maintained that the district court erred 1. in refusing to permit a jury trial on her claims under 42 U.S.C. § 1981,[1] 2. in determining that her discharge was not discriminatory or a reprisal, 3. in determining that she had not been discriminated against in pay, 4. in denying her motion for class action certification as untimely, and 5. in refusing to admit into evidence the findings of fact and the determination made by the Equal Employment Opportunity Commission.

This appeal was originally heard by a panel of this Court. Prior to the filing of a panel opinion, the Court voted to consider the appeal in banc.[1a] We affirm the judgment of the district court. Of the five arguments advanced by Mrs. Walton, only the first—the propriety of the district court's refusal to permit a jury trial on her claims under 42 U.S.C. § 1981 [1b]—requires extended discussion.

## I.

We have concluded that the district court did not err in refusing to permit a jury trial on Mrs. Walton's claims under 42 U.S.C. § 1981.

## A.

Mrs. Walton initiated two separate employment discrimination actions against the defendant-appellee, Eaton Corporation. Both were filed in the District Court for the Eastern District of Pennsylvania.

Mrs. Walton initiated her first employment discrimination action against Eaton (Civil Action 73–322) on February 14, 1973. That suit was brought as a class action in which Mrs. Walton sought to represent all blacks and females who (a) were employed by Eaton at that time, (b) had sought employment with Eaton during the past eight years, or (c) would seek employment with Eaton in the future. Mrs. Walton asserted causes of action under 42 U.S.C. §§ 1981 and 1983, as well as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleged that, because she was black and female, Eaton had discriminated against her in many respects. She claimed that she had been denied equal treatment with respect to pay, promotions, and opportunities to obtain educational benefits. She

1. Mrs. Walton concedes that she did not have a right to a jury trial on her Title VII claims. See, e. g., Slack v. Havens, 522 F.2d 1091, 1094 (9th Cir. 1975); EEOC v. Detroit Edison Co., 515 F.2d 301, 308 (6th Cir. 1975), vacated on other grounds, 431 U.S. 951, 97 S.Ct. 2669, 52 L.Ed.2d 267 (1977); Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir. 1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969).

1a. Judge Gibbons has attached the panel majority opinion to his in banc dissent. He notes that it was never published under our Internal Operating Rules, as it had not cleared the Court after circulation to non-panel members and was therefore not filed. As a reading of the panel majority opinion reveals, and as the panel dissent (which has not been reproduced) pointed out, there was a failure in the panel opinion to discuss the very important procedural issue upon which this case turns. That failure resulted in this Court's decision to rehear this case in banc. Inasmuch as it has not been the practice to publish panel opinions which have not cleared the Court on initial circulation, we do not feel that it would add anything

to the issues before the Court to publish the panel dissent, particularly since we regard the discussion of our in banc procedure as found in Part IV of Judge Gibbons's dissenting opinion as being irrelevant to the issues presently before the Court.

1b. The dissent states that the district court ruled "that, as a matter of law, a claim under 42 U.S.C. § 1981 for money damages for the infliction of emotional harm was not an action at law to which the seventh amendment right to jury trial applied." Dissenting Op. at 1. See also id. at 3, 4. The record casts appreciable doubt upon the accuracy of this characterization of the district court's ruling. The defendant argued strenuously in this Court that the district court ruled only that the plaintiff had orally waived her right to jury trial under § 1981. The district court record reveals that the arguments of counsel and the observations of the district judge were focused on the issue of waiver as well as on the issue of pendent state claims. Because we affirm the district court for the reasons stated below, we find it unnecessary to address any substantive issue presented by 42 U.S.C. § 1981.

also alleged that she had been harassed on the job and that she was discriminatorily discharged. Finally, she claimed that Eaton had systematically discriminated on the basis of race and sex. She sought declaratory and injunctive relief, an award of back pay for herself and all other members of the classes she sought to represent, attorney's fees, punitive damages, costs, and "such other relief as the Court may deem proper." Her complaint in Civil Action 73–322 expressly waived trial by jury. Eaton filed a timely answer, which did not seek a jury trial, and Mrs. Walton did not demand a jury trial within ten days thereafter.[2]

At some point in early 1974 it appears that a second set of attorneys began to represent Mrs. Walton. Apparently not satisfied with the complaint filed by her first attorneys, the new attorneys, rather than seeking to amend the first complaint, initiated a second employment discrimination action (Civil Action No. 74–373) against Eaton on February 14, 1974, exactly one year after the first complaint was filed. In almost all respects Mrs. Walton's second complaint was indistinguishable from her first. Like her first complaint, it asserted causes of action under 42 U.S.C. §§ 1981 and 1983 and Title VII. In addition, the second complaint, like the first, alleged that Mrs. Walton had been harassed, discharged, and denied equal treatment in pay, promotions, and educational opportunities because of her race and sex. However, Mrs. Walton's second complaint did differ from her first in three respects: it was not brought as a class action; it contained a general demand for a trial by jury; and this second complaint, unlike the first, alleged that Mrs. Walton had suffered "emotional and mental injury" as a result of the defendant's action. Consequently the second complaint apparently sought compensatory damages,[3] while the first complaint sought only punitive damages.

On July 3, 1974, the district court, on its own motion, consolidated the two actions. On November 19, 1974, nine months after the second complaint was filed and one year and nine months after the first complaint was filed, Mrs. Walton moved to have her first employment discrimination action (Civil Action 73–322) certified as a class action. The district court denied this motion on December 17, 1974.

### B.

At the outset, it is clear that Mrs. Walton had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant. *United States v. Haytian Republic,* 154 U.S. 118, 123–24, 14 S.Ct. 992, 38 L.Ed. 930 (1894); *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 851, 125 Ct.Cl. 297 (1st Cir. 1947) (Clark, J., sitting by designation); 1A J. Moore, Federal Practice ¶ 0.219 at 2601 (2d ed. 1974); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1232–33 (2d ed. 1973).

When the district court became aware that the two actions begun by Mrs. Walton were virtually identical, it could have dismissed her second complaint without prejudice or it could have stayed proceedings in the second action until judgment was entered in the first. *Id.* As Judge Charles E. Clark wrote:

"The pendency of a prior pending action in the same federal court is ground for abatement of the second action." . . . There is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket . . . . (Citations omitted.)

*Sutcliffe Storage & Warehouse Co. v. United States, supra* at 851. Obviously, if the district court had dismissed the second complaint or stayed the second action, Mrs. Walton would have had no right to a jury

**2.** *See* Fed.R.Civ.Proc. 38(b) and (d).

**3.** The prayer for relief in the second complaint stated simply:

"Wherefore, Plaintiff claims of the Defendant sums of money in excess of Ten Thousand ($10,000.00) Dollars and brings this action to recover same."

trial.[4] However, instead of following either of those procedures, the district court on its own motion consolidated the two actions.

■ The district court's decision to consolidate Mrs. Walton's two actions was obviously unobjectionable. When a court learns that two possibly duplicative actions are pending on its docket, consolidation may well be the most administratively efficient procedure. If the second complaint proves to contain some new matters, consolidation—unlike dismissal of the second complaint without prejudice or staying the second action—will avoid two trials on closely related matters. If, on the other hand, the second complaint proves to contain nothing new, consolidation of the two actions will cause no harm *provided* that the district court carefully insures that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed. In particular, the court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed.R.Civ.Proc. 15, and demand for trial by jury, Fed.R.Civ.Proc. 38.

■ In the instant case, we are convinced that, in considering whether Mrs. Walton waiver her right to trial by jury, the filing of the second complaint and its consolidation with the first must be regarded as an amendment of the first complaint. If Mrs. Walton's second set of attorneys was dissatisfied with the first complaint filed by her previous counsel, the proper procedure for them to have followed would have been to have sought leave of court to amend the first complaint.[5] The adoption of an incorrect procedure as employed in this case should not result in a greater right to trial

by jury than would have been available had the correct course of amending the first complaint been followed. In light of the sequence of events described above, it is evident that Mrs. Walton's second complaint must be regarded as no more than an amendment to her first complaint. As such, it is clearly apparent that she waived her right to trial by jury on her claims under 42 U.S.C. § 1981.

### C.

■ It is well established that if the original pleadings in an action effectively waive trial by jury under Fed.R.Civ.Proc. 38(b) and (d), the right to trial by jury of all matters contained in those pleadings cannot be revived by amending the original pleadings. *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 581 (7th Cir. 1975); *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1049 (9th Cir. 1974); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2d Cir. 1973); *Olund v. Swarthout*, 459 F.2d 999, 1000 (6th Cir. 1974); *Williams v. Farmers & Merchants Ins. Co.*, 457 F.2d 37, 38 (8th Cir. 1972); *Connecticut General Life Insurance Co. v. Breslin*, 332 F.2d 928, 931 (5th Cir. 1964); *American Fidelity & Casualty Co. v. All American Bus Lines, Inc.*, 190 F.2d 234, 237–38 (10th Cir. 1951); *Fontaine v. Tasty Baking Co.*, 20 Fed.R.Serv.2d 490 (E.D.Pa.1975); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2320 at 94–95 (1971); 5 J. Moore, Federal Practice ¶ 38.39[2] at 321–22 (2d ed. 1976). *Cf. Pennsylvania ex rel. Feiling v. Sincavage*, 439 F.2d 1133 (3d Cir. 1971) (amendment to complaint adding new plaintiff did not revive previously waived right to jury trial). Jury trial may be demanded for any "new issues" raised by the amended pleadings, "but the amendment does not revive a right, previously waived, to demand jury

4. If the district court had dismissed the second complaint without prejudice or if it had stayed the second action, the first action would undoubtedly have proceeded to final judgment. That action would have been tried to the court, since Mrs. Walton had unquestionably waived jury trial in that action. Once final judgment was entered in the first action, res judicata would have barred the second action.

5. Since Eaton had filed an answer to the first complaint on August 17, 1973 leave of court would have been required in order to amend that complaint on February 14, 1974. Fed.R.Civ.Proc. 15(a).

trial on the issues already framed by the original pleadings." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2320 at 94–95 (1971).

■ In this case, Mrs. Walton unquestionably waived her right to trial by jury on all issues framed by her original complaint.[6] The only addition to the second complaint which could even arguably constitute a "new issue" was the allegation that Mrs. Walton had suffered mental and emotional injury.[7] We are convinced, however, that that allegation cannot be accurately characterized as a "new issue" in the sense relevant here.

As we read the established case law, it holds that amended pleadings which concern "the same general issues" as the previous pleadings do not raise "new issues" under Fed.R.Civ.Proc. 38(b), even if they differ from the earlier pleadings in some particulars. *Hostrop v. Board of Junior College District No. 515, supra,* at 580–81; *Trixler Brokerage Co. v. Ralston Purina Co., supra,* at 1049–50; *Lanza v. Drexel & Co., supra,* at 1309–11; *Connecticut General Life Insurance Co. v. Breslin, supra,* at 931; *Alcoa S. S. Co. v. Ryan,* 211 F.2d 576, 578 (2d Cir. 1954); *Moore v. United States,* 196 F.2d 906, 908 (5th Cir. 1952); *Roth v. Hyer,* 142 F.2d 227, 228 (5th Cir. 1944); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 45 F.R.D. 38, 39–40 (S.D.N.Y. 1968); *Sleeman v. Chesapeake & Ohio Railroad Co.,* 263 F.Supp. 117, 118–19 (W.D. Mich.1967); *Southern Equipment Co. v. Christensen,* 40 FRD 126, 127 (S.D.N.Y.

1966); *Railex Corp. v. Joseph Guss & Sons, Inc.,* 40 FRD 119, 123–24 (D.D.C.1966), *aff'd* 382 F.2d 179 (D.C.Cir.1967) (issue apparently not raised on appeal); *Leighton v. New York, Susquehanna and Western RR Co.,* 36 F.R.D. 248 (S.D.N.Y.1964); *New Hampshire Fire Insurance Co. v. Perkins,* 28 F.R.D. 588, 590–91 (D.Del.1961); *E. H. Tate Co. v. Jiffy Enterprises,* 16 F.R.D. 571 (E.D.Pa. 1954); Annot., 18 A.L.R.Fed. 754, §§ 6–7 (1974).

The most illuminating case on this point is *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973). In that case, the owners of all the stock of the Victor Billiard Company conveyed those shares to the BarChris Construction Company in exchange for BarChris stock. Prior to the transfer, BarChris officers supplied an annual report, a prospectus, and other financial reports concerning BarChris to the owners of the Victor stock. When BarChris filed a petition in bankruptcy less than one year after the exchange, the former owners of the Victor stock commenced an action for compensatory damages against former officers and directors of BarChris under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 CFR § 240.10b–5. One of the defendant-officers, Kircher, waived his right to trial by jury on claims framed by this complaint. Two years after their original complaint was filed, the plaintiffs amended their original complaint by adding an allegation that the prospectus which had been supplied to them was false on the date of issue. In

---

**6.** The words "(JURY TRIAL WAIVED)" appear at the head of Mrs. Walton's complaint in Civil Action 73–322. Mrs. Walton waived her right to a jury trial on the claims asserted in that action by failing to demand a jury trial within 10 days after Eaton filed its answer on August 17, 1973. Fed.R.Civ.Proc. 38(b) and (d).

**7.** As we noted above, an additional difference between the first and second complaints is that the only type of damages specifically requested in the first complaint was punitive damages whereas the second complaint appears to have requested compensatory damages. It is clear, however, that the request for compensatory damages in the second complaint did not constitute a "new issue." The first complaint re-

quested, in addition to punitive damages, "such other relief as the Court may deem appropriate." That request could be construed as encompassing a demand for compensatory damages. In addition, even if the first complaint had not included a demand for "such other relief as the Court may deem appropriate," Mrs. Walton might still have been awarded compensatory damages in the first action since Fed.R.Civ.Proc. 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See also Hostrop v. Bd. of Jr. College Dist. No. 515, supra,* at 579.

response to this amendment, Kircher made a timely demand for trial by jury. A year and one-half later, the plaintiffs again amended their complaint. The new amendments 1. alleged that the defendant's conduct had violated Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), 2. alleged that the defendants' conduct had been willful, and 3. requested punitive damages. In response, Kircher again made a timely demand for trial by jury. Nevertheless, the district court denied Kircher's application for a jury trial, and the Second Circuit affirmed. The Court wrote:

> The amendments did not raise new issues within the meaning of Rule 38 such as would entitle Kircher to demand a jury trial as of right. The case involved, and the original complaint raised, *one basic issue*: Whether plaintiffs were fraudulently induced to exchange their Victor stock. Kircher's failure to demand a jury trial waived his right as to all issues relating to this *general area of dispute.* The amendment added no new issues: *the same conduct* and the same allegedly false documents constituted the basis for any claim under Rule 10b–5, Section 17(a), or common law fraud. The willfulness and falsity as of a particular date merely clarified *"the same general issues"* raised in the original complaint. *Moore v. United States,* 196 F.2d 906, 908 (5th Cir. 1952). Kircher had been put on notice of the underlying facts and basic legal theory—fraud—upon which plaintiffs sought relief, and the character of

the suit was in no way changed by the amendments.

(Emphasis added.) *Id.* at 1310.

lt seems clear that the reasoning in *Lanza,* which we find persuasive, defeats Mrs. Walton's claim that she was entitled to a jury trial in this case. Under *Lanza,* the allegation that Mrs. Walton had suffered "emotional and mental" injury would not constitute a "new issue." In the language of *Lanza,* the addition of that allegation did not change the "basic issue" or the "general area of dispute," *i. e.,* whether Eaton discriminated against Mrs. Walton while she was in the company's employ. The second complaint here concerned the "same conduct" on the part of Eaton as the first complaint, *i. e.,* that Eaton discriminatorily discharged Mrs. Walton; that Eaton employees harassed her on the job; and that Eaton discriminated against her with respect to pay, promotions, and opportunities to obtain educational benefits. Moreover, the addition in this case of the allegation that Mrs. Walton suffered "mental and emotional injury" is analogous to the amendment in *Lanza* which alleged for the first time that the defendants had acted willfully. Both "amendments" pleaded facts which had not been alleged in the previous complaints, but neither raised a "new issue," since they did not change the "basic issue" in the case or the "general area of dispute."

█ In sum, under the sound reasoning of *Lanza* and the other authorities treating with this point, it is obvious that no "new issue" was added by Mrs. Walton's second complaint [7a] and that therefore her first

---

7a. The dissent cites only one case in support of its contention that the claim that Mrs. Walton suffered "emotional and mental injury" was a "new issue." That case, *First Wisconsin Bank of Rice Lake v. Klapmeier,* 526 F.2d 77 (8th Cir. 1975), hardly supports the dissent's position, since the amended pleading in that case is not at all comparable to the "amended pleading" here. *Klapmeier* was an action by a bank against the guarantors of a promissory note. The bank sought to recover from the guarantors the amount of a judgment which it had previously obtained against the maker of the note. The defense asserted in the guarantors' original answer appears to have been that the bank had orally agreed that the guarantee would terminate prior to the date on which the

judgment against the maker was obtained. The guarantors' amended answer, which contained a *timely* demand for trial by jury (a factor not present here), added the new defense of fraud in the inducement. Since the defense of fraud in the inducement did not concern the "same conduct" or the same "basic issue" as the original answer, the court correctly concluded that it had raised a "new issue" within the meaning of Fed.R.Civ.Proc. 38.

Even were we to regard Mrs. Walton's claim of emotional injury as a "new issue"—which we do not—the very most to which she could have been entitled under *Klapmeier* (526 F.2d at 81) is a jury trial as to those damages. However, inasmuch as no liability had been

complaint with its express jury waiver did not entitle her dispute with Eaton to be resolved by a jury.[7b]

## II.

■ We do not believe that any of the other arguments advanced by Mrs. Walton are meritorious. In determining that Mrs. Walton's discharge was neither discriminatory nor a reprisal, the district court applied the correct standard of law [8] and its findings of facts were not "clearly erroneous." [9] The same is true of the district court's determination that Mrs. Walton had not been discriminated against in pay.[10]

■ We are convinced that the district court did not abuse its discretion in denying Mrs. Walton's motion for a class action determination, since that motion was not made until 21 months after her first

found by the district court with respect to the predicate for such damages, it would have been meaningless to remand for that purpose.

**7b.** The dissent contends that the district court erred by failing to consider whether the plaintiff should have been permitted a jury trial under Fed.R.Civ.Proc. 39(b) despite the fact that she had waived her right to a jury trial under Fed.R.Civ.Proc. 38. The record in this case squarely refutes the dissent's argument.

It is quite true that the district court never formally addressed the question of whether the plaintiff should be afforded a trial by jury under Fed.R.Civ.Proc. 39(b). The simple reason why it did not is apparent. The plaintiff's attorneys never the filed the motion provided for under Fed.R.Civ.Proc. 39(b) nor did they give any other indication that they sought consideration under that Rule.

Fed.R.Civ.Proc. 39(b) provides in relevant part that

notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion *upon motion* may order a trial by a jury of any or all issues. (Emphasis added.)

"[I]n order to invoke the court's discretion under Rule 39(b), a motion, or some similar manifestation of the desire of a party to have a jury trial is required." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2334 at 112 (1971).

In this case, it seems quite clear that the plaintiff's attorneys never attempted to invoke Rule 39 because the circumstances under which the district court denied plaintiff's request for a jury trial under Rule 38 made it crystal clear that the court would not have permitted a jury trial under Rule 39.

By February 18, 1975, the date on which the district court denied the plaintiff's request for a jury trial, this case had already been subjected to numerous delays. On January 7, 1975, the district court had entered an order requiring that all discovery be completed by January 31 and placing the case on the February trial list. On February 14, the plaintiff filed a motion for a two-month trial continuance so that her statistical expert could complete his analysis of Eaton's employment practices. Argument on this motion was heard on February 18. At that hearing the district court stated that it would not permit the entire trial to be delayed for two months. However, the court did make the following proposal: if a nonjury trial was held, the court offered to hear all the evidence other than that of plaintiff's expert at the scheduled time and to take the expert's testimony two months later when his statistical analysis was completed. That proposal, however, was "conditioned on one thing. We can't try it with a jury under those circumstances." Supplemental Appendix at 146. Plaintiff's counsel continued to demand a jury trial on at least some issues, and the court then denied plaintiff's requests for a two-month continuance and for a trial by jury. Since a jury trial—whether under Rule 38 or Rule 39(b)—would have required a two-month delay and since the district court had already stated unequivocally that it would not allow such a delay, it is obvious why no Rule 39(b) motion was ever made.

**8.** *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (discriminatory refusal to hire).

**9.** In a case in which an employee alleges that he or she has been discriminatorily discharged, the employer must prevail if it establishes a "legitimate, nondiscriminatory" reason for the discharge [*see McDonnell Douglas Corp. v. Green, supra,* at 802–03, 93 S.Ct. 1817] *and* if the employee fails to prove that the employer's stated reason for discharging the employee was in fact a pretext. *Id.* at 804, 93 S.Ct. 1817.

In this case, the district court made findings of fact which establish that Eaton had a "legitimate, nondiscriminatory" reason for discharging Mrs. Walton, *viz.,* that Mrs. Walton walked off the job without permission in violation of the company's written work rules. *See* findings of fact 73–85, 87, 103. The court also made findings which establish that Eaton's stated reason for discharging Mrs. Walton was not a pretext. *See* findings of fact 90–92. Based upon an independent review of the record, we cannot set aside these findings as "clearly erroneous." Fed.R.Civ.Proc. 52(a); *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir. 1972).

**10.** *See* findings of fact 34–36.

complaint was filed.[11] Finally, we believe that the district court did not abuse its discretion by refusing to admit the EEOC's findings of fact and its determination on the merits of Mrs. Walton's charges.[12] *Gillin v. Federal Paper Board Co., Inc.,* 479 F.2d 97, 99 (2d Cir. 1973); *Cox v. Babcock and Wilcox Co.,* 471 F.2d 13, 15 (4th Cir. 1972); *Heard v. Mueller Co.,* 464 F.2d 190, 194 (6th Cir. 1972).

For the reasons expressed above, the judgment of the district court will be affirmed.

Chief Judge SEITZ concurs in the result.

ADAMS, Circuit Judge, concurring:

I concur in the judgment of the Court for the reasons set forth in Parts IC and II of Judge Garth's opinion.

Essentially, I agree with the proposition, implicit in the dissent, that we must be circumspect when dealing with the constitutional right to a jury trial. Nonetheless, even if we were to accept the dissent's analysis of the "same issue" question, we ultimately would have to face the hard fact that the district court made findings that Eaton did not engage in discriminatory activity-findings which would preclude a determination that section 1981 was violated. Since the predicate for an award of damages for emotional and mental injury is thus lacking, any remand for a jury trial on the issue of such damages would appear to serve no useful purpose.[1]

GIBBONS, Circuit Judge, dissenting.

As the opinion of the court indicates, this case was taken *in banc* after circulation, but before filing, of a panel opinion. Since the author of the panel opinion was a district judge,[1] he did not participate in our *in banc* consideration of the case. *See* 28 U.S.C. § 46(c). His opinion for the panel majority, however, disposed of the only ruling which the trial court made on the issues which the majority opinion addresses. The trial court ruled, and the appellees urge on appeal, that, as a matter of law, a claim under 42 U.S.C. § 1981 for money damages for the infliction of emotional harm was not an action at law to which the seventh amendment right to jury trial applied. For the reasons set forth in District Judge Cohen's panel opinion, which I annex hereto as an appendix, it is clear to me that this ruling was error. The majority does not defend this ruling. Thus I assume they too agree it was indefensible.

Instead of defending the ruling which the trial court made, however, the majority decides this appeal on grounds: (1) which the district court never addressed; (2) as to which, since they were never presented to the district court, appellant had no opportunity to respond; (3) which were not briefed

---

**11.** Rule 45(c) of the Rules of the United States District Court for the Eastern District of Pennsylvania provides in part:

Within 90 days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Rule 23, F.R.Civ.P., as to whether the case is to be maintained as a class action.

We believe that Local Rule 45(c) is a valid exercise of the district court's power under Fed.R.Civ.Proc. 83, and we are convinced that the court did not abuse its discretion in denying a motion for a class action determination which was untimely under the local rule. *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 274 (E.D.Pa.1975); *Fox v. Prudent Resources,* 69 FRD 74, 77 & n. 1 (E.D.Pa.1975). *See also Gilinsky v. Columbia Univ.,* 62 FRD 178, 179 (S.D.N.Y.1974) (concerns a similar local rule, the S.D.N.Y.'s Civil Rule 11A(c)); *Walker v.*

*Columbia Univ.,* 62 FRD 63, 64 (S.D.N.Y.1974); *Sheridan v. Liquor Salemen's Union,* 60 FRD 48, 50–51 (S.D.N.Y.1973).

**12.** We note that although the court refused to admit the EEOC's findings of fact and its determination, the court admitted portions of the file compiled by the EEOC and permitted an EEOC investigator to testify.

**1.** I agree with the statements in footnote 1(b) of Judge Garth's opinion to the effect that the district court's ruling on the jury trial issue appears to have been directed to the question whether Ms. Walton had waived her right to a jury trial and not to whether jury trials are available in actions brought under § 1981.

**1.** Mitchell H. Cohen, United States District Court for the District of New Jersey, sitting by designation.

by either party on appeal; (4) which ignore a significant provision of the Federal Rules of Civil Procedure; (5) which distort the meaning of the rule which the opinion purports to apply and misstates the thrust of the cases relied upon; and (6) which usurp a function reserved to the district courts. Neither the result nor the process of appellate decision-making which led to it are defensible.

I

The majority, blindly ignoring the fact that the district court treated the second complaint not as an amendment, but as a new complaint stating a separate claim, proceeds to construct an affirmance based on Fed.R.Civ.P. 38 and the cases construing it. I will address the treatment of those cases in Part II. But before turning to those cases I would like to call attention to the selectivity with which the majority deals with the Federal Rules of Civil Procedure. Except in a footnote in response to my dissent, no mention whatsoever is made of Fed.R.Civ.P. 39(b), which provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." The discretion explicitly provided for in Rule 39(b) is that of the district court, not of this court. This discretionary power, however, was never exercised, because the district court ruled, as a matter of law, that a § 1981 claim was not a claim upon which a demand for a jury trial could have been made of right.

A leading commentary on the Federal Rules says of Rule 39(b):

There is a wide divergence of view on how a court should exercise its discretion on a motion under Rule 39(b). It is the rule in some courts that "the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." Elsewhere it has been held that the court has no discretion to grant jury trial when there was no timely demand unless there are special circumstances excusing the

oversight or default. Indeed it has been claimed that the cases requiring a showing of special circumstances represent such a settled course of decision that they have "placed a gloss upon the Rule which a judge could no more disregard than if the words had appeared in the Rule itself." Finally there are those decisions that in effect read Rule 39(b) out of the rules, as where a court says that "it has been the unbending practice of this Court for many years not to order a jury trial once it has been waived," or where it is held that a motion under Rule 39(b) will not be granted if any party objects.

. Those courts that have taken a highly restrictive view of the circumstances in which the discretion given by Rule 39(b) will be exercised in favor of allowing a jury trial have reasoned that the power to order trial by jury given them by that rule was not intended to serve as a device to circumvent or bypass the positive action that must be taken under Rule 38 to obtain jury trial. These decisions seem to place the emphasis in the wrong place. Technical insistence upon imposing a penalty for default by denying a jury trial is not in the spirit of the rules. The rules do not limit the court's discretion in ordering a jury in cases in which there would have been a right to jury trial. The court ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case, rather than with a fixed policy against granting the application or even a preconceived notion that applications of this kind are usually to be denied.

\*    \*    \*    \*    \*    \*

Since Rule 39(b) entrusts discretion in this matter to the district courts, the appellate courts ordinarily will not intervene, whether the district court has granted the motion or denied it.

9 C. Wright & A. Miller Federal Practice and Procedure, § 2334 at 113–16, 123 (1971) (footnotes omitted).

In this instance the district court neither granted nor denied a Rule 39(b) motion. It

ruled that, as a matter of law, a § 1981 claim would never support a demand for a jury trial. I have found no instance in which an appellate court substituted its own original exercise of discretion under Rule 39(b) for the unexercised discretion of a district court. Directly in point is Judge Tone's statement in *Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569, 581 (7th Cir. 1975): "We can hardly affirm an exercise of discretion that did not occur, and therefore must consider whether plaintiff was otherwise entitled to a jury trial." There may be contrary cases on this point which my research has not disclosed, but because the majority is off on a frolic of its own I have not had the benefit of briefing on the point. I do know, however, that this court has not heretofore exercised original Rule 39(b) discretion. I also know that we have not heretofore taken a position on either of the divergent approaches referred to in *Wright & Miller* as to the degree of discretion reposed in the district courts under Rule 39(b). But the majority now chooses either to ignore the existence of Rule 39(b) or, *sub silentio,* to hold that, in this case, the district court possessed no discretionary power to grant Rule 39(b) relief. Neither position is tenable.

The Rule 39(b) problems, which in my view inhere in the majority opinion, cannot be avoided by accepting the majority's contention that "in considering whether Mrs. Walton waived her right to trial by jury, the filing of the second complaint and its consolidation with the first must be regarded as an amendment of the first complaint." Majority Op. at 71. Since the district court consolidated the cases rather than either dismissing or staying the second complaint, it follows from the majority's reasoning that the court allowed the amendment. (We do not know, of course, whether the district court had that in mind since it never mentioned the subject of an amended complaint.) Treating the case as one in which an amendment was permitted, we are confronted with the fact that after allowing it, again on the majority's analysis, the district court struck the jury trial demand because a § 1981 claim, as a matter of

law, did not call for it. Since no one on the court asserts that the § 1981 ruling was correct, and since no federal court has the authority to ignore the Federal Rules of Civil Procedure, it must be assumed that the majority holds, *sub silentio,* that the district court lacked the power to grant Rule 39(b) relief, even if it had been given the opportunity to do so.

Even assuming that this court were to adopt the position of those courts which take the narrowest view of the scope of discretion permitted under Rule 39(b), we still could not, in good conscience, say that, had a favorable discretion been exercised, we would reverse. For, as I will suggest in Part III *infra,* it is at least arguable that there was compliance with Rule 38(b) with respect to the second complaint and, even if that argument is not accepted, there are strong reasons why the omission of a jury demand in the first complaint was understandable and should be excused, if a district court had so held in the exercise of its discretionary power pursuant to Rule 39(b).

## II

Although I refer to the majority's "amendment" analysis for purposes of my Rule 39(b) discussion, I do not otherwise accept it, because it misstates the effect of the authorities upon which it relies and ignores the substantial differences in factual and legal issues tendered by Mrs. Walton's second complaint. The major underpinning for the majority's contention that the second complaint should be treated as an amendment of the first is the opening sentence in Part I B:

> At the outset, it is clear that Mrs. Walton had no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant.

For that proposition two cases and two secondary authorities are cited. The citation to P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, Hart & Wechsler's The Federal Courts and The Federal System 1232–33 (2d ed. 1973) is hard to understand, since the

referenced pages do not support the majority's position, but deal only with the issue of conflicts in jurisdiction between separate courts over the same subject matter. The citation to 1A J. Moore, Federal Practice ¶ 0.219 at 2601 (2d ed. 1974) is almost equally puzzling, since that page deals mainly with the limitations imposed upon federal courts on enjoining state proceedings by 28 U.S.C. § 2283. The opening two paragraphs on that page, however, read:

Two or more actions *in personam* between the same parties and involving the same subject matter may proceed concurrently (1) in the courts of the same forum, or (2) in the courts of two or more forums.

Where such actions are pending in the courts of the same forum a plea in abatement can result in the dismissal of all but the first action[1] . . . .

[1] *Sutcliffe Storage & Warehouse Co.* (CCA 1st, 1947), 162 F.2d 849.

That quote does not sound at all like the proposition for which the majority cites it. The rule is not that there cannot be simultaneous lawsuits, but that there can be "two or more actions *in personam* between the same parties and involving the same subject matter in the courts of the same forum," and that a plea in abatement may be granted should the *trial court* so choose. Here, of course, no plea in abatement was considered. The two cases cited by the majority lend even less support to the court's pivotal proposition. *United States v. The Haytian Republic,* 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894), did not involve simultaneous *in personam* actions at all. It involved successive *in rem* libels of a vessel in separate districts (Washington and Oregon) for separate, but similar, smuggling offenses, both of which took place before the filing of the first libel in Washington. The district court in Oregon, in which the second libel action was filed, dismissed the libel on the theory that all the smuggling charges should have been included in the first libel. The Ninth Circuit affirmed, but the Supreme Court reversed, writing:

The elementary principle which governs the availability of the plea of "other suit pending" was thus stated in *Watson v. Jones,* 13 Wall. 679, 715, 20 L.Ed. 666:

"When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest, there must be the same rights asserted and the same relief prayed for. This relief must be founded on the same facts, and the title, or essential basis of the relief sought, must be the same."

Tested by these principles, it is obvious that the plea of pendency of the suit in Washington was not available here. There were the same parties, but not the same rights asserted; and the claim of relief was not founded upon the same facts. In the case just cited it was said that the true test of the sufficiency of a plea of "other suit pending" in another forum was the legal efficacy of the first suit, when finally disposed of, as "the thing adjudged," regarding the matters at issue in the second suit. *Dick v. Gilmer,* 4 La.Ann. 520; *Bischoff v. Theurer,* 8 La.Ann. 15.

The efficiency of the test, thus applied, results from the fact that the elements constituting the thing adjudged, and those necessary for the plea of "other suit pending," are identical.

\*     \*     \*     \*     \*     \*

It is contended, however, that, although the two suits involved the assertion of different rights, as the rights asserted in the last suit were in existence at the time the first suit was brought, therefore they should have been asserted in that suit, and could not be afterwards relied upon in a separate suit, in a different forum. In support of this proposition we are referred to the case of *Stark v. Starr,* 94 U.S. 477, 485, [24 L.Ed. 276] and this language is quoted from the opinion in that case:

"It is undoubtedly a settled question that a party seeking to enforce a claim legal or equitable must present to the court, either by the pleadings or proofs,

all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible."

This statement, however, is qualified by the following, which is not included in the citation: "But this principle does not require distinct causes of action—that is to say, distinct matters—each of which would authorize by itself independent relief, to be presented in a single suit, though they existed at the same time and might be considered together." p. 485.

The qualification states the elementary rule. One of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other.

154 U.S. at 124–25, 14 S.Ct. at 993–94. The discussion in *The Haytian Republic* does not sound any more like the proposition for which it was cited than does the cited passage from Professor Moore's treatise. And, given the fact that *The Haytian Republic* was exclusively an *in rem* action, it is highly questionable whether it could support the majority's position even if it contained, which it does not, any language supporting such a procedural rule. Finally, there is *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849 (1st Cir. 1947), the case which Professor Moore cites for the proposition that a plea in abatement of a second action in the same court *may* be granted. (*Sutcliffe,* in turn, relied on an earlier edition of Professor Moore's treatise. 162 F.2d at 851. Thus do great legal principles become settled.) Plaintiff Sutcliffe had a single claim against the United States for use and occupancy of a single building from June 15, 1942, to December 31, 1945. This single claim asserted damages in excess of $25,000. Though the claim was cognizable in the Court of Claims under the Tucker Act, Sutcliffe preferred

to sue in the District Court for the District of Massachusetts. However, the district court's jurisdiction of claims against the United States was limited to $10,000; thus, to circumvent this jurisdictional limit, Sutcliffe filed four separate actions, each for less than the $10,000 jurisdictional limit. The district court dismissed three of these suits and retained one, on the ground that they were brought for inseparable parts of the claim set forth in the first action filed. On appeal from the dismissal of the three actions, the First Circuit held that the plaintiff could not, by dividing up a single claim for use and occupancy over a determined period, defeat the jurisdictional arrangements of the Tucker Act. Though the case does stand as support for the long settled proposition against splitting causes of actions for all amounts due under a lease at the time the action is filed, it is difficult to see how that case bears upon the proposition for which it is cited by the majority in the instant case.

The rule of *The Haytian Republic,* applied to this record, points in exactly the opposite direction from the majority's conclusion. Before a plea in abatement can be granted "there must be the same parties, . . . there must be the same rights asserted and the same relief prayed for. This relief must be founded on the same facts, and the title, or essential basis of the relief sought must be the same." 154 U.S. at 124, 14 S.Ct. at 993. Entirely aside from the fact that the class action complaint sought the addition of other parties, there are, with respect to the two complaints, other substantial factual and legal differences. The first complaint seeks the equitable relief of reinstatement with back pay. It also seeks punitive damages for a wrongful discharge. The second complaint seeks compensation for personal injury in the nature of emotional harm. Proof of the first cause of action would require no evidence that plaintiff suffered emotional injury, or that that injury was permanent, or that it resulted in medical expense, impairment of earning capacity, or pain and suffering. Proof of the first cause of action would not

resolve legal issues such as whether § 1981 would afford recovery for the infliction of emotional harm, or whether such infliction, to be actionable, must be intentional. The first complaint was essentially an action for wrongful breach of an employment contract. The second was essentially a tort action for infliction of emotional harm. By no stretch of the imagination can those two causes of action be crammed under the rubric of the *Sutcliffe* case. Whatever may be said about the court's *sua sponte* consolidation, no authority that I know of, and certainly none referred to in the majority opinion, would justify dismissal of the second complaint because it "split" a cause of action. Since appellant does not complain about the consolidation order, except to the extent that it resulted in the loss of a right to jury trial, I see no need for discussing it, except to note that even if it was proper it was not dispositive on the jury trial issue.

Turning from the red herrings of *The Haytian Republic* and *Sutcliffe* to the cases under Rule 38(b) on which the court relies for its conclusion that the second complaint introduced no "new issue", I am equally unpersuaded. Most of the cases cited in Part I C of the majority opinion actually support the appellant. All recognize the "same issues" test. None can be twisted, turned or tortured into authority for the proposition that a claim for breach of an employment relationship presents the "same issues" as a claim for personal injury, mental or physical. I will not rehearse the clear differences between this case and all those cited on which the majority relies. I will, instead, refer only to the one case described by the majority as "[t]he most illuminating case on this point"—*Lanza v. Drexel Co.*, 479 F.2d 1277 (2d Cir. 1973). In that case, as the court points out, the amendment focused on the defendants' conduct—"*the same conduct*", as the majority italicize it. The majority, then, reasons:

> Moreover, the addition in this case of the allegation that Mrs. Walton suffered "mental and emotional injury" is analogous to the amendment in *Lanza* which alleged for the first time that the defendants had acted willfully.

Majority Op. at 73. What possible analogy exists between an amendment adding a personal injury claim to an employment termination claim and an amendment adding specificity respecting the defendants' fraud? If that is an analogy, I am a Martian. The case would be analogous, perhaps, if the plaintiffs in *Lanza* had amended the complaint to allege "they also broke our legs." It would also have been decided differently, at least in any circuit but this.

A case which at least reflects the kind of reasoned approach to the identification of new issues which should govern our application of Rule 38 is *First Wis. Nat. Bank of Rice Lake v. Klapmeier*, 526 F.2d 77 (8th Cir. 1975). The original complaint was a suit on a guarantee and did not demand a jury trial. Nor was a jury trial demanded by the defendants in their answer or in the counterclaim which they filed against the plaintiff. Thereafter the defendants were permitted to amend their answer by affirmatively pleading fraudulent inducement; the amended answer also included, for the first time, a demand for a jury trial. The plaintiff moved to strike the demand on the ground that it was untimely, and this motion was granted by the trial court. The Eighth Circuit reversed. Judge Lay wrote:

> The parties have not argued the issue in this manner in this court. The claim made here is that the court abused its discretion under Rule 39(b) in failing to grant relief from the untimely demand. Nonetheless, we feel the right to trial by jury is so fundamental that this court should acknowledge defendants' actual compliance with Rule 38(b) and allow the demand as a matter of right for the new issue raised. Rule 38(a) recognizes the right to a jury trial in this language:
>
>> The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.
>
> We order a new trial on defendants' defense of fraud in the inducement raised in the amended answer.

526 F.2d at 80. The case *sub judice,* I submit, is an *a fortiori* case. The second complaint, which the majority treats as an amendment, at all times contained a demand for a jury trial, and it patently raised new issues. Thus at a minimum, the appellant was entitled as a matter of right to a jury trial on the issue of emotional harm.

In reference to Mrs. Walton's filing of her second complaint the majority states:

> [T]he court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed. R.Civ.Proc. 15, and demand for trial by jury, Fed.R.Civ.Proc. 38.

Majority Op. at 71. If a majority of this court chooses to characterize Mrs. Walton's filing of her second complaint as an "incorrect procedure", it is, of course, law of the case. But, from the perspective of the attorney who filed the second complaint and assumed Mrs. Walton's representation only after the attorney who filed the first complaint disassociated himself from her case, the correct procedure might not have appeared so clear as it now appears to the majority.

We have not heard why the first attorney waived a jury trial on the first complaint, or why he omitted the personal injury claim, because the parties have never been heard on the theory on which the case is being decided. I can speculate, however, as to why the attorney who drew the first complaint committed those omissions. The first complaint sought class action relief. Consequently, he may have believed that a class action, being originally an equitable device, was one in which a jury trial is unavailable. *See* 5 Moore's Federal Practice ¶ 38.38[2] at 308–09 (2d ed. 1976) (indicating that there is authority to that effect, but criticizing it). I have no doubt that jury trials are available in class actions for claims which are legal in nature. *See, e. g., Link v. Mercedes-Benz of North America, Inc.,* 550 F.2d 860 (3d Cir. 1977). But the paucity of authority on that point, and that not unanimous, may have led the first at-torney to conclude that he might as well waive what he could not have.

As to the omission of the claim for emotional harm in the first complaint, it seems likely that the first attorney would have omitted that claim because it is, in its nature, highly individual. It would be difficult to imagine any district court granting class action treatment for such a claim. I can easily understand an attorney concluding that a stumbling block to class action treatment should be omitted in the interest of maximizing the leverage inherent in the class action device. In any event, had they been given the opportunity, the attorneys for Mrs. Walton, even on the majority's "amendment" theory, could, I think, have presented plausible arguments to the district court as to why their "neglect" in demanding a jury trial should be excused as permitted by Rule 39(b).

I am not sure what the majority opinion means for attorneys faced with similar choices in the future. Possibly it means that every claim that the original plaintiff has, on any legal theory and for any injury, must be asserted in the original complaint if it, in any way, grows out of an identifiable relationship between the parties. This opinion will surely cause trouble in the future, for the "same issues" test for purposes of Rule 38 is only a different aspect of the "same issues" test for res judicata. Thus, a likely implication of the holding is that, had Mrs. Walton not filed the second complaint and had the first been tried, her personal injury claim would have been barred. And if the "same issues" test is as open-ended as the majority says, what of class members who fail to opt out in ignorance of other claims they might have made? Will a judgment for the defendant bar such claims? Only time, and litigation, will tell.

## IV

Fed.R.App.P. 35(a) provides that a hearing *in banc* is not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a

question of exceptional importance. This case meets neither criterion. The original panel majority opinion is entirely consistent with the prior law of this circuit, and the present majority opinion does not even rely on third circuit precedent for its critical holding. The case was of no particular importance to anyone except the litigants at the panel stage. It was taken *in banc* not for either criterion of Rule 35(a), but solely because one panel member, by the intensity of his advocacy for a result, persuaded four colleagues that the full court should review the panel result. The case has now become significant because the court cannot reach the desired result without dismantling Rule 39(b) by exercising a discretion that is committed to the district court and warping precedent with respect to identity of issues. Appellate Rule 35 was never intended to operate thus. Nor was the appellate process intended to operate in a manner which denies litigants notice and opportunity to be heard on discretionary rulings. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

## CONCLUSION

The majority treats the second complaint as an "amendment" because it presented the same issues, and then it incorrectly applies Rule 38(b) because the "amendment" presented the same issues. However, in my view, the second complaint clearly presented a different issue, and even if it were an amendment, which it was not, a jury trial on the new issue was available under Rule 38.[2] And, even if it was not, discretionary relief was available under Rule 39(b) and

---

2. Judge Adams, concurring with the majority opinion, sustains the judgment on the following basis:

Nonetheless, even if we were to accept the dissent's analysis of the "same issue" question, we ultimately would have to face the hard fact that the district court made findings that Eaton did not engage in discriminatory activity—findings which would preclude a determination that section 1981 was violated. Since the predicate for an award of damages for emotional and mental injury is thus lacking, any remand for a jury trial on the issue of such damages would appear to serve no useful purpose.

was never considered, because the trial court erred in ruling that, as a matter of law, a § 1981 claim would never support a demand for a jury trial. The only proper course is a reversal and remand.

### Appendix.

(Original panel opinion in Walton v. Eaton Corp. Judge Garth's dissent is not included.)

---

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 76–1707

---

CAROL J. WALTON,
*Appellant*

*v.*

EATON CORPORATION

---

## OPINION OF THE COURT

COHEN, Senior District Judge:

The threshold question in these consolidated actions, alleging a denial of equal employment opportunities, is whether the appellant was entitled to a trial by jury. The district court determined that she was not. We reverse and remand for a new trial.

### I.

On February 14, 1973 the appellant, Carol J. Walton, filed a complaint in the district

In my view, if the district court had originally made a correct ruling on the legal issue of whether a claim under § 1981 for money damages for the infliction of emotional harm was an action at law to which the seventh amendment right to a jury trial applied, the district court would have had no right to make findings of fact regarding employment discrimination in violation of § 1981. *See Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

court, Civil Action 73–322, against the Eaton Corporation (Eaton), claiming that because of her race and sex, she was denied certain equal employment opportunities. She contends that Eaton violated 42 U.S.C. § 2000e–2(a)(1) and (2); 42 U.S.C. § 1981 and 42 U.S.C. § 1983. A trial by jury was not demanded in this action.

On February 14, 1974 appellant filed a second complaint in the district court, Civil Action 74–373, which was substantially similar to the initial complaint. In this action she sought an additional element of damage, namely, that as a result of Eaton's unlawful and intentional acts in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1981 and 42 U.S.C. § 1983, she was caused to suffer severe emotional distress culminating in a loss of earnings and diminution of earning capacity. She sought damages in excess of $10,000.00 and demanded a jury trial.

Thereafter, on July 2, 1974, these two actions were consolidated for trial. The district court, on January 7, 1975, entered an Order that all discovery was to be completed by January 31, 1975, that these consolidated actions were to be placed on the February 1975 trial calendar, and that the parties were to file their final pretrial memoranda on or before February 14, 1975.

On February 14, 1975, the appellant then proceeded to file in this Court a Petition for a Writ of Mandamus and Prohibition and a Motion for Stay (No. 75–1138). She sought to compel the district court to allow her to complete discovery, to grant an extension of time in which to file a pretrial memorandum and for a continuance of the trial. This Court denied appellant's Motion for Stay by Order, dated February 18, 1975. On March 3, 1975, appellant filed a Motion for Leave to Withdraw the Petition for Writ of Mandamus and Prohibition, which was granted by Order, dated March 7, 1975.

The district court, on February 18, 1975, heard arguments on appellant's motions concerning, *inter alia,* the completion of discovery and for a continuance of trial, which were ultimately denied. In addition, the Court held that the appellant was not entitled to a jury trial on the basis of her complaint filed in Civil Action 74–373. Thereafter, a non-jury trial on both complaints was commenced on February 21, 1975. An Order and Opinion was filed March 26, 1976 granting judgment in favor of Eaton.

Although the appellant raises numerous issues on appeal, the only matter which need be discussed herein is the appellant's right to a jury trial.

## II.

The Seventh Amendment to the Constitution provides that in "[s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." The application of the Seventh Amendment to judicial proceedings traditionally depended on whether the law suit was legal or equitable in nature.

". . . not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered . . . . In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights." *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830).

Rule 38 of the Federal Rules of Civil Procedure provides the mechanism for a litigant to demand a jury trial. In the instant case, appellant properly sought to jury trial in Civil Action 74–373 and inasmuch as she made no demand for a jury trial in Civil Action 73–322, her right to do so was waived.[1]

---

1. *Fed.R.Civ.P.* 38(d) states: "The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A

It is not entirely clear as to the precise basis for the district court's ruling of February 18, 1975 in denying the appellant a jury trial.[2] It does appear, however, that the trial court placed its reliance on the premise that, as a matter of law, there is no right to a jury trial involving claims arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983.[3]

Courts have consistently held that in Title VII actions, there is no right to a jury trial. The relief provisions of Title VII, contained in Section 706(g) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g) do not specifically authorize an award of legal damages. The relief sought in Title VII cases—reinstatement and the award of back pay—is considered to be a form of restitution. Since restitution is an equitable remedy, a jury is not required. Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969); Loo v. Gerarge, 374 F.Supp. 1338, 1340 (D.Hawaii 1974).

The appellant, in her brief, concedes that under Title VII actions exclusively she was not entitled to a jury trial. However, in Civil Action 74–373, she alleges that the district court refused to acknowledge her right to a jury trial where the relief sought was both equitable and legal in nature. The legal relief sought was for the ". . . [d]efendant's unlawful, malicious, willful and intentional violation of plaintiff's civil rights, as aforesaid, plaintiff was caused to suffer severe emotional and mental injury, she was caused to suffer embarrassment and humiliation [and] she was caused to suffer loss of earnings and earning capacity." (App. at 28A).

Appellant contends that this cause of action arises under 42 U.S.C. § 1981, which serves as a predicate for a suit for damages as well as for equitable relief. In Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court ruled that a party suing under 42 U.S.C. § 1981, even if joined with a claim under Title VII of the Civil Rights Act of 1964, may obtain legal damages in addition to the appropriate equitable relief.

"Although this Court has not specifically so held, it is well settled among the Federal Courts of Appeals—and we now join them—that § 1981 affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." (Citations and Footnotes omitted) Id. at 459–460, 95 S.Ct. at 1720. See Flores v. Local 25, International Brotherhood of Electrical Workers, AFL–CIO, 407 F.Supp. 218 (E.D.N.Y.1976). Therefore, when a complaint alleges a violation of 42 U.S.C. § 1981, seeking both equitable and legal relief, a jury demand is appropriate.

The Supreme Court case of Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), illuminates the issue currently presented in this case. The facts of Curtis involved § 812 of the Civil Rights Act of 1968, 42 U.S.C. § 3612, which gives private plaintiffs the right to bring civil actions for injunctive relief and damages. The plaintiff in Curtis sought legal and equitable remedies for the defendant's alleged refusal to rent to her an apartment on the basis of her race. The defendant demanded a jury trial, which was refused by the district court. The Supreme Court affirmed the Seventh Circuit which reversed the district court.

demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

**2.** Upon review of the record, we recognize and commend the district court's desire to dispose of these two cases. We are not unaware of the congested calendars that confront all courts;

however, dispatch must give way to constitutional rights.

**3.** In speaking to appellant's counsel, the district court stated: ". . . I will rule you are not entitled to a jury trial on the basis of the complaint you filed in 74–373." (Supp.App. at 26b.)

Justice Marshall, in delivering the opinion for a unanimous court, held that since a damage suit under 42 U.S.C. § 3612 includes the enforcement of legal rights, the Seventh Amendment entitles the plaintiff to a jury trial. Furthermore, the Court held that the right to a jury trial attaches generally to actions enforcing statutory rights. "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis, supra*, at 194, 94 S.Ct. at 1008.

Thus, under § 812 of the Civil Rights Act of 1968, 42 U.S.C. § 3612, the Court held that there was a Seventh Amendment right to a trial by jury because legal damages as well as equitable relief were available.

"A damages action under the statute [§ 812] sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law. More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law." (Footnotes omitted) *Id.* at 195–196, 94 S.Ct. at 1009.

In a footnote the Court further reasoned that "[a]n action to redress racial discrimination may also be likened to an action for . . . intentional infliction of mental distress." *Curtis, supra*, at n. 10, 94 S.Ct. at 1009.

In applying the principles of *Curtis* to the instant case, two requirements must be met by the appellant if she is to have the right to a jury trial. First, the statute, which

appellant alleges Eaton violated, must allow for legal relief. Second, legal damages must be pleaded and sought by the appellant.[4] It is undisputed that the appellant in Civil Action 74–373 sought legal damages under 42 U.S.C. § 1981, in accordance with *Johnson v. Railway Express Agency, Inc., supra*. It is also uncontested that 42 U.S.C. § 1981 mandates a jury trial where legal relief is sought.

Since appellant's prayer for relief included legal and equitable claims and these claims are based on common issues of underlying fact, she has the right to have all her claims tried by a jury.

"If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand. And if this legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact. . . ." *Curtis, supra*, at n. 11, 94 S.Ct. at 1009.

Eaton does not dispute appellant's right to seek legal damages under 42 U.S.C. § 1981. However, it does contend that the type of relief presently sought was equitable as opposed to legal in nature and therefore the denial of a jury trial was proper. This contention is untenable. As previously discussed, the plaintiff sought relief in the form of actual damages, which is a traditional form of relief offered in a court of law. *Curtis, supra*, at 196, 94 S.Ct. 1005. Even if the legal claim is to be characterized as incidental to the equitable relief sought, the right to a jury trial cannot be abridged. *Curtis, supra*, at n. 11, 94 S.Ct. 1005.

Eaton also takes the position that the appellant waived her rights to a jury trial under 42 U.S.C. § 1981 in Civil Action 74–373. We hold that this argument is unsup-

---

4. In *Flores v. Local 25, International Brotherhood of Electrical Workers, AFL–CIO*, 407 F.Supp. 218 (E.D.N.Y.1976), the plaintiff commenced a class action suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. A demand was made by the defendants for a jury trial. The plaintiffs moved to strike such demand. The

district court held that inasmuch as the complaint sought only equitable relief, a jury trial was not required. "Thus while a jury trial demand in a suit, based on a statute, in which damages were sought would present a different question, no Seventh Amendment right to trial by jury exists when, as here, only equitable relief is sought under § 1981." *Id.* at 220.

ported by the record. (Supp.App. 23b, 24b, 26b). A demand for a jury trial was timely asserted in accordance with *Fed.R.Civ.P.* 38(b). The appellant consistently asserted, prior to trial, that she was entitled to a jury trial and that at no time did she consent to withdraw her demand.[5]

Finally, Eaton contends that a jury trial should be denied if a "functional justification" in doing so exists. *Curtis, supra,* at 195, 94 S.Ct. 1005. Eaton maintains that in attempting to accommodate the appellant and her expert witness, the district court sought not to delay the trial and therefore was justified in refusing appellant's demand for a jury trial. Eaton's reliance on *Curtis, supra,* is misplaced:

> "These cases uphold congressional power to entrust enforcement of statutory rights to an administrative process or specialized court of equity free from the strictures of the Seventh Amendment. But when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no *functional justification* for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." (Emphasis added and footnotes omitted) *Id.* at 195, 94 S.Ct. at 1009.

The "functional justification" for denying a jury trial, to which the Supreme Court refers, involves cases where there is a carefully structured scheme entrusted by Congress to an administrative process or specialized court. Therefore, we hold that Eaton's expediency argument must fail. The *Curtis* decision stands for the premise that there can be no "functional justification," as a matter of law, in denying a litigant his or her constitutional right to a jury trial in a civil action, when a statute or common law so provides.

We conclude that the appellant's request for a jury trial, in Civil Action 74–373, was proper. Consequently, the judgment is vacated as to both Civil Actions 73–322 and 74–373, and remanded for a new trial on all issues, consistent with this opinion.