In re Freddie L. HICKS, Debtor.

Freddie L. Hicks, Plaintiff,

v.

Homeq Servicing Corporation, Defendant.

Bankruptcy No. 02–11301–TS.
Adversary No. 02–1113–TS.

United States Bankruptcy Court,
W.D. Oklahoma.

Sept. 5, 2002.

Michael J. Rose, Michael J. Rose & Associates, Oklahoma City, OK, for Plaintiffs.

David A. Cheek, John P. Falcone, McKinney & Stringer, Oklahoma City, OK, for Defendants.

## ORDER DENYING MOTION TO COMPEL ARBITRATION

NILES L. JACKSON, Bankruptcy Judge.

### Introduction

The captioned adversary proceeding was brought by Debtor, Freddie L. Hicks ("Debtor") against Defendant, Homeq Servicing Corporation ("Homeq"), on May 14, 2002. Debtor's claims arise out of loan made by Homeq to Debtor and a mortgage taken by Homeq on Debtor's home to secure the loan. Debtor alleges claims

against Homeq for: (i) violations of the Oklahoma Consumer Protection Act, 15 Okla. Stat. § 751 et seq. (2000); (ii) a declaratory ruling that the loan is unconscionable; (iii) a declaratory ruling that the lien represented by the mortgage on Debtor's home is void and invalid; and (iv) violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. Debtor additionally objects to the secured status of Homeq's claim.

Homeq filed its answer to Debtor's adversary complaint on June 13, 2002, denying the material allegations of each of Debtor's claims. Homeq then filed a Motion to Compel Arbitration and for Stay of Proceedings on June 27, 2002 (the "Motion to Compel"). Attached to the Motion to Compel is a copy of a document signed by Debtor at the time the loan was made titled "Agreement for the Arbitration of Disputes" (the "Arbitration Agreement"). In the Arbitration Agreement, Debtor and Homeq "agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement." Arbitration Agreement, ¶ 1. The Arbitration Agreement broadly defines a "dispute" as:

> any claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction. It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims.

Id. at ¶ 3. It then expressly gives as examples of types of disputes governed by the Arbitration Agreement, claims under the Truth in Lending Act and Regulation Z, as well as other federal or state consumer protection statutes or regulations. Id.

The Arbitration Agreement provides that the costs of any arbitration "shall be *divided* as follows:

> * *The party requesting the arbitration proceeding shall pay to the Arbitrator the amount of $125.00 when the demand for arbitration is made.*

> * We [Homeq] will pay to the Arbitrator all other costs for the arbitration proceeding *up to a maximum of one day (eight hours) of hearings.*

> * *All costs of the arbitration proceeding that exceed one day of hearing will be paid by the non-prevailing party.*

> * In the case of an appeal, the appealing party will pay the cost of filing an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing the appeal.

> * Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law.

Id. at p. 2 (emphasis added).

Debtor filed her Objection to the Motion to Compel on July 15, 2002. In it, she asked the Court to "resist the temptation to unclutter its docket by referring this and similar cases to binding arbitration." Objection, p. 7. Debtor first argues that the Arbitration Agreement is unenforceable because it is unilateral. Debtor argues that the clause compelling the arbitration of disputes applies only to disputes that she would bring against Homeq, and not to claims that would commonly be pursued by Homeq against her. Debtor also argues that the Arbitration Agreement does not provide for the selection of an unbiased arbitrator. Finally, Debtor argues that

her claims against Homeq constitute a core proceeding in bankruptcy, and therefore must be determined by this Court.

Homeq filed a reply brief in support of its Motion to Compel on July 26, 2002. Debtor filed a Reply Brief in support of her objection on August 16, 2002.

The Court has reviewed the parties' briefs, as well as the law applicable thereto, and rules as follows.

### Discussion

The Court rejects Debtor's arguments regarding the alleged lack of mutuality of the Arbitration Agreement. First, the Court does not read the Arbitration Agreement as narrowly as Debtor. The Arbitration Agreement does not give Homeq the right to refuse to arbitrate disputes covered by the agreement. Rather, both parties are bound to arbitrate the disputes covered by the Arbitration Agreement.[1] Moreover, the Court does not view the fact that mortgage foreclosure claims are expressly excluded from the disputes covered by the Arbitration Agreement as particularly sinister. First, the foreclosure process could easily include parties not bound by the Arbitration Agreement such as state or county officials charged with the collection of unpaid property taxes. Further, a foreclosure action is frequently required in order to obtain marketable title to property obtained through the foreclosure process.

The Court also rejects Debtor's arguments regarding the alleged bias of the arbitration services specified in the Arbitration Agreement. The information attached to its objection and reply brief is of questionable value, and does not even go to any alleged bias of one of the arbitration services specified in the Arbitration Agreement.

 Turning to the issue of the enforceability of the Arbitration Agreement, the Court is cognizant of the strong federal policy favoring the enforcement of arbitration agreements reflected in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., (the "FAA"). As the United States Supreme Court has repeatedly held, the FAA is intended "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). To this end, the Supreme Court has repeatedly upheld the arbitrability of various federal statutory claims, including claims such as those raised by Debtor herein. *See, e.g., Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (Truth in Lending Act); *Gilmer, supra.,* (Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act). *See*

---

**1.** The Court notes that Debtor's counsel failed to inform the Court that the opinion of the Oklahoma Court of Appeals relied on by Debtor in advancing this argument, and attached as Exhibit A to Debtor's Reply Brief, was withdrawn from publication by order of the Oklahoma Supreme Court on September 13, 1996. According to the Oklahoma Supreme Court Rules, unpublished opinions "shall not be considered as precedent by any court or cited in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel, or law of the case." *See* Okla.Sup.Ct.R. 1.200(b)(5).

*also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482 (10th Cir.1994) (concluding that Title VII claims are subject to compulsory arbitration).

■ In *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000), the Supreme Court states that two questions must be answered before one can determine whether statutory claims may be arbitrated: (1) whether the parties agreed to submit the Debtor's claims to arbitration; and (2) whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Given the broad scope of the disputes subject to arbitration included in the Arbitration Agreement, the Court has little trouble concluding that Debtor and Homeq agreed to submit the claims raised in Debtor's adversary complaint to arbitration. Accordingly, the answer to the first question posed in *Randolph* is clearly yes.

■ The answer to the second question posed in *Randolph* is more complicated. Absent Debtor's bankruptcy filing, the types of claims raised in the adversary complaint would be arbitrable. However, due to Debtor's bankruptcy filing, the Court must reconcile the FAA with the protections provided by the Bankruptcy Code. In this regard, Debtor bears the burden of demonstrating "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

■ Debtor attempts to meet its burden by arguing that its claims against Homeq constitute core proceedings that will have a significant impact on Debtor's estate. The core versus non-core distinction has been used by a number of courts to determine whether a bankruptcy court has the discretion to refuse compel the arbitration of a dispute. Courts have held that bankruptcy courts have little or no discretion to refuse to compel the arbitration of proceedings not deemed to be core proceedings pursuant to 28 U.S.C. § 157(b). *See, e.g., United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc. (In re United States Lines, Inc.),* 197 F.3d 631, 640 (2nd Cir.1999); *Insurance Company of North America v. NGC Settlement Trust (In re National Gypsum Co.),* 118 F.3d 1056, 1066 (5th Cir.1997); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149,1160–61 (3rd Cir.1989). Further, even the determination that a proceeding involves a core claim does not automatically give the Court discretion to stay arbitration of that claim. Rather, the Court must "carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause." *Hays & Co.,* 885 F.2d at 1161.

■ Among the proceedings identified as core pursuant to 28 U.S.C. § 157(b), are determinations of the validity, extent, or priority of liens. § 157(b)(K). Nevertheless, the Court does not agree with the argument advanced by Debtor that her claims under the Oklahoma Consumer Protection Act, the TILA or for declaratory relief regarding the unconscionability or validity of Homeq's mortgage are core proceedings. In *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990), the Tenth Circuit Court of Appeals held that core proceedings are proceedings that have no existence outside of bankruptcy court. Actions that do not depend on the bankruptcy laws for their existence and that could proceed in another court absent the bankruptcy filing are therefore not core proceedings.

■ This Court's jurisdiction to hear and determine the referenced claims arises out of its "related to" jurisdiction conferred by 28 U.S.C. § 1334(b). As the Tenth Circuit Bankruptcy Appellate Panel has observed, a proceeding is "related to" a bankruptcy proceeding if it could have been commenced in federal or state court independently of the bankruptcy case, but the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997). The BAP, in *Midgard*, gives causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 as an example of a class of proceedings that are "related to" a bankruptcy proceeding. *Id.*

■ Conversely, the Court does believe that Debtor's objection to Homeq's secured claim is a core proceeding that "arises in" Debtor's bankruptcy proceeding. In *Midgard*, the BAP states:

Proceedings "arising in" a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code.... For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code.

*Midgard*, 204 B.R. at 771. The claims resolution process is such an example of a proceeding that could not exist outside of a bankruptcy case, but does not involve a cause of action created by the Bankruptcy Code.

The Court therefore concludes that Debtor's adversary proceeding includes claims that are both core and non-core.

Further, apart from the potential liability of Debtor for the costs of the arbitration in the event she does not prevail, the impact on Debtor's estate or its creditors of allowing the arbitration to proceed would be slight because the litigation concerns Debtor's home, which Debtor claims as an exempt asset. Thus, the Court could stay further proceedings related to the objection to Homeq's claim, and compel Debtor to arbitrate the remaining claims. However, the Court is not inclined to do so due to its concerns regarding the manner in which the Arbitration Agreement provides for the payment of the costs of the arbitration.

■ The presumption in favor of enforcing agreements to arbitrate is not without limits. *Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir.1999). Arbitration is only appropriate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" thereby allowing the statute to serve its purposes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (alteration in original). The costs of an arbitration are directly related to a litigant's ability to pursue a claim. Recognizing this fact, the Supreme Court, in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000), acknowledged that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." The Supreme Court went on to hold that a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring

such costs. *Id.* at 92, 121 S.Ct. at 522.[2]

Debtor in this case is in bankruptcy. Her bankruptcy petition and schedules reveal that her assets total $17,970 (the vast majority of which are comprised of her home), and her liabilities total $30,247.52. *See* Debtor's Bankruptcy Petition, Summary of Schedules. Her monthly income is $583.00, and her monthly expenses total $518.00. *Id.*, Schedules I and J.

The Arbitration Agreement expressly provides for the division of the expenses of arbitration in this case. It requires Debtor to pay a $125.00 fee when she makes her demand for arbitration, and then obligates Homeq to pay only for the first day of any arbitration proceeding that results. If the arbitration proceeding takes more than one day to complete, Debtor bears the risk that she will be responsible all the additional costs of the arbitration proceeding in the event she does not prevail. Given the complex nature of Debtor's claims herein, the Court can easily envision this proceeding lasting more than a single day. Accordingly, the risk that Debtor might become liable for the costs of the arbitration proceeding in the event she is unsuccessful are very real.

The Court views the cost structure of the Arbitration Agreement herein as similar to the fee-splitting cost structure of an arbitration agreement considered by the Tenth Circuit Court of Appeals in *Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230 (10th Cir.1999). In *Shankle,* the arbitration agreement at issue covered an employee's employment relationship with his employer, and required the employee to pay half of the arbitrator's fees. The Tenth Circuit held that requiring payment from someone who cannot afford to pay "undermines the remedial and deterrent functions of the federal anti-discrimination laws." *Id.* at 1235. The court in *Shankle* held that the presence of the fee-splitting provision in the arbitration agreement called into question the accessibility of arbitral forum to the employee while at the same time prohibiting his resort to a judicial forum to resolve the statutory claims at issue. Concluding that the employee, a former janitor, could not afford the fee, the Tenth Circuit affirmed the decision of the district court holding that the arbitration agreement was unenforceable.

The Court finds the provision in the Arbitration Agreement regarding the division of the costs of arbitration in this case to be similar to the fee-splitting provision in the arbitration agreement the Tenth Circuit refused to enforce in *Shankle.* In particular, the Court notes Debtor's potential liability for the costs of the arbitration exceeding one day could inhibit her willingness to pursue her claims against Homeq, and calls into question the accessibility of the arbitral forum to resolve Debtor's claims. Further, the potential liability arising from the cost structure of the Arbitration Agreement would have a significant impact on the estate and its creditors.

### Decision

Debtor has adequately met her burden of establishing that the cost structure of the Arbitration Agreement, in light of Debtor's precarious financial situation, would effectively preclude her from vindicating her rights in the arbitral forum as required by *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Ho-

**2.** The Supreme Court did not reach the issue of how detailed such a showing must be in *Randolph.*

meq's Motion to Compel is therefore denied.