In re Roslyn PORTER, Debtor.

Roslyn Porter, Plaintiff,

v.

NationsCredit Consumer Discount Company; Bank of America, NA.; NationsCredit Consumer Corporation; NationsCredit Insurance Corporation; Nations Credit Financial Services Corporation; Fairbanks Capital Corporation; Protective Life Insurance Company, and other Defendants who are yet unknown to the Plaintiff class, Defendant.

Bankruptcy No. 00–34284F.
Adversary No. 02–1453.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 19, 2003.

Paul J. Giordano, Philadelphia, PA, Lorraine Gazzara Romolini, Law Offices of Mark J. Udren & Assoc., Cherry Hill, NJ, for creditor.

Mary Jeffery, Philadelphia, PA, for debtor.

## MEMORANDUM

BRUCE I. FOX, Chief Judge.

The defendants in the above-captioned putative class action have requested that this adversary proceeding be dismissed pursuant to Fed.R.Civ.P. 12(b), which is incorporated into bankruptcy proceedings by Fed. R. Bankr.P. 7012(b). Specifically, the defendants assert, *inter alia*, that this court lacks subject matter jurisdiction over the claims of the unnamed proposed class members, as well as the individual claims of the named plaintiff.[1]

The plaintiff, Roslyn Porter, argues that this court does have subject matter jurisdiction over the class and individual claims, and so opposes dismissal. In the alternative, she contends that, if I determine that subject matter jurisdiction is lacking, I should refer this proceeding to the district court by having the reference withdrawn, pursuant to 28 U.S.C. § 157(d).

For the following reasons, I conclude that this court does not have subject matter jurisdiction over the purported class claims, that the individual claims must also be dismissed, and that it is inappropriate for me to urge the district court to withdraw the reference in this proceeding.

## I.

The relevant facts surrounding this proceeding are not in dispute and are deduced from the pleadings and docket entries of matters pending in this court.

The debtor, Ms. Porter, filed a voluntary petition in bankruptcy under chapter 13 on November 15, 2000. In 1998, prior to her bankruptcy filing, she had entered into a loan transaction involving NationsCredit and, in connection with that transaction, purchased credit insurance from Protective Life Insurance Company. As a result of that loan transaction, NationsCredit ob-

---

1. Although, in their motion, the NationsCredit defendants request dismissal of the class claims under Rule 12(b)(2), which refers to a lack of personal jurisdiction, the memorandum supporting that motion, as well as the oral argument of counsel, maintains that the court lacks subject matter jurisdiction. Therefore, the reference to Rule 12(b)(2) was in error, and the defendants actually rely upon Rule 12(b)(1).

tained a security interest in Ms. Porter's residence.

Her proposed chapter 13 plan, filed on November 27, 2000, stated in relevant handwritten part:

No secured creditors will be paid through this Plan. The claim of Nations Credit [sic] will be determined in litigation raising TILA claims and claims under section 506 of the Bankruptcy Code, and all other relevant claims.

The proposed plan also provided that title to property would revest to the debtor upon confirmation. *See* 11 U.S.C. § 1327(b). (Neither the plan nor the debtor's schedules make reference to any claim held against Protective Life.) This plan was confirmed, without opposition from NationsCredit, on May 7, 2002.

Accordingly, in this chapter 13 case, it was anticipated upon confirmation that NationsCredit's secured claim would not be provided for in the debtor's plan, that there would be litigation between these parties, and that the debtor would prosecute such litigation post-confirmation. *Compare In re Johnson*, 13 B.R. 263 (Bankr.D.R.I.1981) (where confirmed chapter 13 plan so provides, the bankruptcy trustee may prosecute a prepetition TILA claim).

Before confirmation, on March 14, 2001, Ms. Porter filed an adversary proceeding against NationsCredit docketed at Adv. No. 01–0157. In her complaint, she asserted claims under the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et. seq.*, requesting damages, rescission of the mortgage held by NationsCredit and attorney's fees. As part of that litigation, Ms. Porter—through her attorney—sought discovery concerning the cost of the credit insurance purchased from Protective Life as part of the loan transaction. She maintained that the cost of this insurance should have been a disclosed to her by NationsCredit as a component of the finance charge of the loan, rather than as part the amount financed.

This 2001 adversary proceeding is still pending for a variety of reasons: discovery disputes; illness and substitution of counsel; and cessation of the defendant's business and termination of all employees. (An affidavit was filed in connection with the 2001 adversary swearing that Nations-Credit merged with another entity in 1999 and all of its business locations were then closed.) Despite this pending litigation, given the terms of the confirmed plan, on November 14, 2002, the chapter 13 trustee filed a report of his final account in this case, with notice sent to all creditors, informing that the debtor had completed her chapter 13 plan and was entitled to a chapter 13 discharge. No opposition to this final report was submitted, and on December 20, 2002, Ms. Porter received her bankruptcy discharge under section 1328.

Six days later, on December 26, 2002, Ms. Porter initiated the instant adversary proceeding, filed "on behalf of herself and all others similarly situated." This second lawsuit asserts claims against the defendants (affiliated entities of NationsCredit plus Protective Life) under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, and under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* (This complaint was amended on January 10, 2003 and again on February 11, 2003.) On behalf of the putative class, the second amended complaint seeks statutory relief in the form of damages plus attorney's fees. Individually, Ms. Porter seeks the same relief, along with rescission of the mortgage lien held by NationsCredit.

The plaintiff class proposed in the "second amended complaint" is identified in ¶ 7. This proposed class:

consists of [ ] "[t]hose borrowers who were included as enrollees of the group life or group disability insurance coverage with Protective Life Insurance Company as part of a loan transaction with NationsCredit Consumer Discount Company or any other named Defendants (known or unknown)."

There is no requirement that these class members are presently (or ever were) debtors in a bankruptcy case in this or any other district. The proposed class simply consists of all borrowers from NationsCredit who, in connection with their respective loans, also purchased credit insurance from Protective Life.[2]

Defendant Protective Life Insurance Company filed its motion to dismiss on March 10, 2003. The NationsCredit defendants jointly filed their own motion to dismiss on March 19, 2003. Oral argument was thereafter held, and all parties submitted supporting memoranda.

## II.

### A.

■ A federal court, in deciding whether to dismiss a proceeding for lack of subject matter jurisdiction, presumptively lacks jurisdiction over that proceeding unless the plaintiff affirmatively demonstrates that jurisdiction exists. *See, e.g., Commodity Futures Trading Commission v. Nahas,* 738 F.2d 487 (D.C.Cir.1984); *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805 (3d Cir.1981); *Walnut Associates v. Saidel,* 164 B.R. 487, 490 (E.D.Pa.1994). This proposition is no less true for bankruptcy courts which, despite their expanded jurisdictional grant found in 28 U.S.C. § 1334, remain courts of limited jurisdiction. *See, e.g., Pacor, Inc. v.*

*Higgins,* 743 F.2d 984 (3d Cir.1984); *In re U.S. Seating Co., Inc.,* 105 B.R. 259, 260 (Bankr.E.D.Pa.1989). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence." *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d at 805; *accord Walnut Associates v. Saidel,* 164 B.R. at 490.

■ In deciding whether the plaintiff has demonstrated the existence of bankruptcy subject matter jurisdiction, I note that adversary proceedings can be grouped into three general categories for purposes of the jurisdictional statute, 28 U.S.C. § 1334(b).

■ First, there are "core" proceedings, which may be heard and resolved by the bankruptcy court via final judgment. *See* 28 U.S.C. § 157(b)(1). Core proceedings represent those disputes that are so intertwined with the bankruptcy process that Congress has the power, under Article I of the Constitution, to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits. *See* 1 *Norton Bankruptcy Law and Practice 2d* § 4.26, at 4–154 (1999) ("The word 'core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law").

■ As established by section 1334(b), core proceedings consist of two subsets: those that "arise under" and those that "arise in" the bankruptcy case. The Third Circuit Court of Appeals has construed section 1334(b) in the following manner:

> Our circuit precedents have "held that a proceeding is core under section 157 if it invokes a substantive right provided by

---

**2.** As mentioned earlier, NationsCredit ceased all operations and closed all of its business locations years ago. Thus, there can be no future members of the plaintiff's proposed class.

title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 267 (3d Cir.1991) (citations and internal quotation marks omitted). In support of its ruling that this case was a core proceeding, the bankruptcy court relied, inter alia, on the decision of the Court of Appeals for the Fifth Circuit in *In re Wood*, 825 F.2d 90 (5th Cir.1987), which observed that the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir.1996); *accord Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

▮▮▮▮ Thus, a proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991) (quoting *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir.1990), which, in turn, quoted *Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987)). Accordingly, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding ...." *In re Guild and Gallery Plus, Inc.*, 72 F.3d at 1178; *see also* 1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv] (L. King et al. eds., 15th ed. rev.2001) (proceedings "arise in" a bankruptcy case when they involve "administrative matters"—*e.g.*, the grant or denial of confirmation; the assumption or rejection of a contract).[3]

The second category of proceedings is referred to as "non-core" or "related" proceedings. A bankruptcy court may hear such proceedings, but may submit only proposed findings of fact and conclusions of law to the district court, *see* 28 U.S.C. § 157(c)(1), unless all parties agree that a final judgment may be entered in bankruptcy court. 28 U.S.C. § 157(c)(2); *see, e.g., Halper v. Halper*, 164 F.3d at 836. The Third Circuit Court of Appeals has defined a non-core proceeding in the following terms:

Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. *See*

---

**3.** Contracts entered into with a bankruptcy fiduciary—a trustee or debtor in possession— are "integral to the estate administration from the date they are entered into" and so "arises in" those bankruptcy cases. *See, e.g., In re Ben Cooper, Inc.*, 896 F.2d 1394, 1399 (2d Cir.), *vacated on other grounds*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *opinion reinstated*, 924 F.2d 36 (2d Cir.), *and*

*cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Thus, a dispute involving such a postpetition contract may be a core proceeding. *See, e.g., id.* at 1399–1400; *In re Arnold Print Works Inc.*, 815 F.2d 165, 169–70 (1st Cir.1987); *Northwestern Institute of Psychiatry, Inc. v. Travelers Indemnity Co.*, 272 B.R. 104, 107–08 (E.D.Pa.2001).

28 U.S.C. § 157(c)(1). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted); *see In re Guild*, 72 F.3d at 1180–81. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." *In re Guild*, 72 F.3d at 1180–81. " 'A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate." ' *Id.* at 1181 (quoting *In re Marcus Hook*, 943 F.2d at 264) (emphasis omitted).

*Halper v. Halper*, 164 F.3d at 837 (footnote omitted).[4]

Typically, litigation which is related to a bankruptcy case is that which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid. *See, e.g., Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987) (a proceeding is "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors").

The concept of a "related" proceeding is simply wider in scope than that of a "core" proceeding; these two jurisdictional categories are not completely separate and distinct. Rather, all "core" proceedings must be "related" to a bankruptcy case, and so may be considered a subset of the broader category. *See In re Williams*, 244 B.R. 858, 865 n. 8 (S.D.Ga.2000); *In re Central Ice Cream Co.*, 82 B.R. 933, 936 (N.D.Ill.1987) ("a proceeding that is not a related proceeding *a fortiori* cannot be a core proceeding").

■ Indeed, the Third Circuit Court of Appeals recognized this point in *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 264, when it explained that, for proposes of determining subject matter jurisdiction, the classification issue of "core" versus "related" is immaterial. The appellate court held (agreeing with other circuit courts) that, when considering whether a bankruptcy court has the power to determine a dispute, a court need only decide whether the proceeding "is a least

---

4. The United States Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), discussed the concept of a "related" proceeding in the following terms:

> Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate....

In attempting to strike an appropriate balance, the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), devised the following test for determining the existence of "related to" jurisdiction: [quoting language at 743 F.2d at 994].

The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the *Pacor* test with little or no variation.... The Second and Seventh Circuits, on the other hand, seem to have adopted a slightly different test.... But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.

*Id.* at 308 n. 6, 115 S.Ct. 1493.

While the Court found it unnecessary to officially endorse the *Pacor* definition of a "related proceeding"—however, it also did not disapprove of it—it recognized that proceedings which have no effect upon property of the estate or upon the administration of the debtor's case are outside the scope of bankruptcy jurisdiction.

'related to' the bankruptcy." *Id.*[5] If core proceedings could be unrelated to a bankruptcy case, the jurisdictional question could only be resolved by analyzing both aspects of the classification issue. Thus, the court in *Marcus Hook* understood that a proceeding "not related" to the bankruptcy case cannot possibly be a core proceeding.

Finally, the third category of proceedings are those which fall outside the definition of "related to" because their outcome would have no effect upon the bankruptcy case. This is generally because their outcome will not affect the property to be administered in the bankruptcy case, the total assets to be distributed, or the total claims to be paid. Over these "unrelated" proceedings, a bankruptcy court has no subject matter jurisdiction. *See, e.g., In re Guild and Gallery Plus, Inc.,* 72 F.3d at 1181–82; *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984).

### B.

■ As Ms. Porter contends, Fed. R. Bankr.P. 7023 generally authorizes class actions as a component of a bankruptcy case when certain criteria are met concerning the nature of the class claims and the number of class members. *See generally In re Whittaker,* 84 B.R. 934 (Bankr. E.D.Pa.), *aff'd sub nom. Whittaker v. Philadelphia Electric Co.,* 92 B.R. 110 (E.D.Pa.1988), *and aff'd,* 882 F.2d 791 (3d Cir.1989). Nevertheless, as the defendants suggest, before a bankruptcy court may properly adjudicate a class action dispute, it must first have subject matter jurisdiction over the claims held by each proposed class member.

■ In the context of diversity jurisdiction, both the United States Supreme Court and the Third Circuit Court of Appeals have held that, in order for a class action lawsuit to be maintained, *all* class members must individually satisfy the jurisdictional amount-in-controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *In re LifeUSA Holding Inc.,* 242 F.3d 136, 142 (3d Cir.2001). Borrowing language from the lower appellate court opinion in *Zahn,* the Supreme Court recognized that, in a class action brought under Fed.R.Civ.P. 23(b)(3)—which permits class action lawsuits in certain situations where the claims of purported class members have questions of law or fact in common—"one plaintiff may not ride in on another's coattails." *Zahn v. International Paper Co.,* 414 U.S. at 301, 94 S.Ct. 505 (quoting *Zahn,* 469 F.2d 1033, 1035 (2d Cir.1972)). Thus, the class cannot aggregate the amount of its claims to satisfy the amount-in-controversy requirement, and any class member who fails to meet that threshold must be dismissed from the case. *See In re LifeUSA Holding Inc.,* 242 F.3d at 142.

■ Although I recognize that *Zahn v. International Paper Co.* and *In re LifeUSA Holding Inc.* address the subject matter jurisdiction requirement of class actions brought pursuant to diversity jurisdiction, 28 U.S.C. § 1332, I find their holdings instructive in applying 28 U.S.C. § 1334(b), the bankruptcy jurisdictional statute. *See Johnson v. United States,* 208 F.R.D. 148, 163 (W.D.Tex.2001) ("[I]t is black letter law that the Court in a class action must have jurisdiction over each

---

5. The categorization of a proceeding as either core or non-core only affects a bankruptcy court's power to enter a final judgment without the consent of the parties. It does not affect the bankruptcy court's power to hear the dispute. *See Matter of Walker,* 51 F.3d 562, 568–69 (5th Cir.1995); *Matter of Wood,* 825 F.2d at 93; *In re Reed,* 94 B.R. 48, 51 (E.D.Pa.1988).

claim in the class in order for the class action to proceed") (construing 28 U.S.C. § 1346); 5 *Moore's Federal Practice* § 23.07[2], at 23–38.1 (Coquilette et al. eds., 3d ed. 1999) ("In general, each plaintiff must satisfy all ... jurisdictional requirements, or the plaintiff should not be included in the class").[6] Thus, before a class action may be maintained under federal bankruptcy court jurisdiction, the class representative must demonstrate that the court has subject matter jurisdiction over each class member's claims, including the claims of the unnamed members.

In this adversary proceeding, the claims of each class member do not fall within the scope of section 1334(b).

 As noted above, in order for the bankruptcy court to have subject matter jurisdiction over claims asserted in an adversary proceeding, those claims must "arise under," "arise in," or "relate to" a bankruptcy case filed under Title 11 of the United States Code. *See, e.g., CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 195–96 (3d Cir.1999).[7] For jurisdictional purposes, a claim in a proceeding "arises under" Title 11 "when it invokes a substantial right created by the Bankruptcy Code." *Id.* at 196; *accord In re Cline,* 282 B.R. 686, 690–92 (W.D.Wash.2002); *Hohl v. Bastian,* 279 B.R. 165, 171–72

(W.D.Pa.2002); 1 *Collier on Bankruptcy* ¶ 3.01[4][c][i], at 3–20 (L. King et al. eds., 15th ed. rev.2003). Similarly, a claim in a proceeding "arises in" Title 11 when the right invoked is not expressly created by the Bankruptcy Code, " 'but could arise solely in the context of a bankruptcy case.' " *In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 267 (3d Cir. 1991)); *see also United States Trustee v. Gryphon at Stone Mansion, Inc.,* 166 F.3d 552, 556 (3d Cir.1999).

Moreover, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *In re Guild and Gallery Plus, Inc.,* 72 F.3d at 1178.

 Applying these standards, it is clear that TILA and RICO claims based upon prepetition loan agreements do not "arise in" or "arise under" a particular bankruptcy case. Neither cause of action represents a claim created by the Bankruptcy Code; neither type of claim arises from the administration of the bankruptcy

---

6. I am aware that another treatise has expressed an exception to this limitation on class actions: "[A] class action can be maintained only if it complies with the requirements of the jurisdictional statute under which it is brought or if the class claims may be brought under the court's pendent jurisdiction." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1755 (2d ed.2003).

In *O'Keefe v. Mercedes–Benz USA, LLC,* 214 F.R.D. 266, 279–81 (E.D.Pa.2003), the District Court explained that courts in some circuits, but not the Third Circuit, had held that the supplemental jurisdictional statute, 28

U.S.C. § 1367, overruled *Zahn.* Not only is *Zahn* still followed in this circuit, *see Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 221–22 (3d Cir.1999), but bankruptcy courts do not possess section 1367 jurisdiction. *See, e.g., Matter of Walker,* 51 F.3d 562, 572 (5th Cir.1995); *In re Foundation for New Era Philanthropy,* 201 B.R. 382, 398–99 (Bankr.E.D.Pa.1996) (and cases cited).

7. In a multi-claim proceeding, the various claims may hold a different jurisdictional status. Some may be core, some may be non-core and some may be unrelated. Each claim must be analyzed separately. *See Halper v. Halper,* 164 F.3d 830, 839 (3d Cir.1999).

case; and both claims exist independently of bankruptcy cases and are frequently raised in non-bankruptcy fora. Accordingly, these claims do not give rise to core proceedings. *See, e.g., In re White*, 172 B.R. 841, 844 (S.D.Miss.1994) (RICO claim arising prepetition is non-core); *In re Derienzo*, 254 B.R. 334 (Bankr.M.D.Pa.2000) (Truth in Lending claim which arises prepetition is non-core); *In re Posey*, 81 B.R. 416, 417 (Bankr.N.D.Miss.1987) (debtor's RICO complaint against creditor bank deemed non-core proceeding). *Compare Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 n. 4 (6th Cir.1992) ("While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee [under RICO] for the trustee's administration of the bankruptcy estate could not"), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

Despite the consistent definition of a "core" proceeding provided by the Third Circuit Court of Appeals, Ms. Porter nevertheless argues in this proceeding that the purported class claims—TILA and RICO—are core claims because they "arose out" of her bankruptcy case. That is, she contends that these class claims were "discovered" by her attorney in her individual 2001 adversary proceeding; therefore, in her view, the claims "arise out" of her individual bankruptcy case.

■ This argument, however, misconstrues the nature of proceedings which "arise in" or "arise under" a bankruptcy case. Potential claims held by third parties, which do not involve any bankruptcy law provisions and which may be raised by those third parties in non-bankruptcy fora, do not "arise in" or "arise under" a debtor's bankruptcy case merely because they were discovered by that debtor during her bankruptcy case. *See In re Fisher*, 151

B.R. 895, 898 (Bankr.N.D.Ill.1993); *see also In re International Nutronics, Inc.*, 3 F.3d 306, 310 (9th Cir.1993) ("An action that arises 'because of' a bankruptcy proceeding does not necessarily 'arise under' the Bankruptcy Code"), *op. superceded on other grounds*, 28 F.3d 965 (9th Cir.), *and cert. denied sub nom. Robertson v. Isomedix, Inc.*, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994). *Compare United States Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d at 556 (claim by the United States trustee for quarterly fees under 28 U.S.C. § 1930 to monitor a chapter 11 case "arises in" that bankruptcy case). These prospective class claims are unconnected with the administration of Ms. Porter's bankruptcy case and cannot be considered as "core" matters. Therefore, the only remaining premise for jurisdiction would be that these claims "relate to" a bankruptcy case.

■ Clearly, claims in favor of Ms. Porter arising from her prepetition loan agreement with NationsCredit would be property of her bankruptcy estate under sections 541(a) and 1306(a). *See, e.g., Matter of Smith*, 640 F.2d 888 (7th Cir.1981); *Rowland v. Novus Financial Corp.*, 949 F.Supp. 1447, 1453 (D.Haw.1996). The disposition of such claims may conceivably affect the assets of the bankruptcy estate (or the claims allowed against the estate) and so would be "related to" Ms. Porter's bankruptcy case. *See, e.g., Smith v. Beal Acceptance Corp.*, 244 B.R. 487, 490 (N.D.Ga.2000); *In re Derienzo*, 254 B.R. 334, 338 (Bankr.M.D.Pa.2000); *In re Hicks*, 285 B.R. 317, 322 (Bankr.W.D.Okla.2002); *see also Matter of Garner*, 556 F.2d 772, 777 (5th Cir.1977) (TILA claim fell within the scope of bankruptcy jurisdiction under the former Bankruptcy Act).

■ Conversely, the claims asserted by the proposed unnamed class members belong to those class members. The dis-

position of such claims, regardless of their result, could have no conceivable effect upon Ms. Porter's bankruptcy case. *See In re Knox,* 237 B.R. 687, 693–94 (Bankr. N.D.Ill.1999); *In re Fisher,* 151 B.R. 895, 897 (Bankr.N.D.Ill.1993); *see also In re Baltic Associates, L.P.,* 149 B.R. 93, 95 (Bankr.E.D.Pa.1993) (claims asserted by non-debtor plaintiffs against non-debtor defendants are unrelated to the debtor's bankruptcy case and are outside the scope of bankruptcy court jurisdiction).

Courts have divided in answering the question whether bankruptcy court jurisdiction over plaintiff class claims against a non-debtor must be limited to claims involving a class of plaintiffs, all of whom are debtors in that bankruptcy district, or whether a nationwide class of plaintiff-debtors is permissible. *Compare In re Cline,* 282 B.R. 686 (W.D.Wash.2002) (nationwide class not permitted), *and In re Williams,* 244 B.R. 858 (S.D.Ga.2000) (same), *with Bank United v. Manley,* 273 B.R. 229 (N.D.Ala.2001) (nationwide class of debtors is permitted), *and In re Noletto,* 244 B.R. 845 (Bankr.S.D.Ala.2000) (same). In order to resolve this dispute, I need not decide that issue.

The class which Ms. Porter seeks to certify is not limited to debtors (either present or past); indeed, it may contain no debtor other than Ms. Porter herself. As noted earlier, the proposed class is to consist of all "borrowers who were included as enrollees of the group life or group disability insurance coverage with Protective Life Insurance Company as part of a loan transaction with NationsCredit Consumer Discount Company or any other named Defendants (known or unknown)."

While the scope of bankruptcy court jurisdiction is broad, it will not often encompass claims of non-debtors against non-debtors. Here, Ms. Porter, as class representative, proposes to prosecute claims held by non-debtor third parties against non-debtor defendants within the framework of her chapter 13 bankruptcy case. Such a class would involve claims outside my jurisdiction. *See generally In re Williams,* 244 B.R. at 866–67 (class TILA claims for debtor plaintiffs outside the bankruptcy district are outside the scope of section 1334(b)); *In re Coggin,* 155 B.R. 934 (Bankr.E.D.N.C.1993) (plaintiff class asserting violation of state law must be limited to debtors with pending chapter 7 cases in the Eastern and Middle Districts of North Carolina); *cf.* 6 *Newberg on Class Actions* § 20:1 (4th ed. 2003) ("The few bankruptcy courts that have considered this question have been reticent to exercise jurisdiction over a claim seeking relief on behalf of a *class of debtors* in bankruptcy against a single creditor, particularly where, as here, the debtors sought damages") (emphasis added).

Nor do the claims of the unnamed class members, in circumstances such as these, become classified as "related to" a bankruptcy case simply because the named plaintiff filed her own bankruptcy case and purports to hold similar claims.[8] Claims held by non-debtor parties are not related to claims held by a debtor simply because they may involve common factual or legal issues. As the Third Circuit has instructed:

> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a contro-

---

**8.** To conclude otherwise would yield counter-intuitive results. For example, plaintiff's legal contention, if valid, would mean that an antitrust and securities class action lawsuit, involving millions of unnamed class mem-bers, *see, e.g., Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), could be heard in a bankruptcy court so long as only one member of the class filed a bankruptcy petition.

versy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b) [the precursor to section 1334(b)]. Judicial economy itself does not justify federal jurisdiction. Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.

*Pacor, Inc. v. Higgins*, 743 F.2d at 994 (internal quotations omitted).

Thus, despite the plaintiff's argument to the contrary, it is not enough that there may be common questions of fact between the debtor's claims and those of the other class members. Rather, it must be apparent that the resolution of these claims could have any effect upon a bankruptcy estate. Here, there is no evidence that the class claims could have any such effect. *See generally In re Baltic Associates, L.P.*, 149 B.R. at 95 ("After examining the complaint, we conclude that plaintiffs have not met their burden of convincing us that the outcome of the dispute between the non-debtor plaintiffs and the defendants could conceivably have any effect on the bankruptcy estates").

Thus, I find that the claims of the proposed unnamed class members do not "arise under" Title 11 or "arise in" or "relate to" a bankruptcy case. Accordingly, I do not have subject matter jurisdiction over those claims. *See In re Williams*, 244 B.R. at 866–67; *In re Fisher*, 151 B.R. at 897.

### III.

#### A.

Some courts, as mentioned earlier, have concluded that bankruptcy subject matter jurisdiction could include claims asserted by a plaintiff class, so long as all members of the class were or are debtors in their own individual bankruptcy cases. *See, e.g., In re Sheffield*, 281 B.R. 24, 27 (Bankr. S.D.Ala.2000). In this proceeding, the proposed class is not so limited.

Where the litigation has only recently commenced, it may be appropriate to permit the plaintiffs to amend the class definition (or the complaint, depending on the reasons the class cannot be certified). *E.g., In re Peterson*, 2001 WL 1910851, at *2 (Bankr.E.D.Cal.2001). Leave to amend the scope of the class is inappropriate, however, if the amendment would be futile and would not result in class certification. *See In re Peterson*, 281 B.R. 685, 689 (Bankr.E.D.Cal.2002); *In re Aiello*, 231 B.R. 693, 709 (Bankr.N.D.Ill. 1999), *aff'd sub nom. Aiello v. Providian Financial Corp.*, 257 B.R. 245 (N.D.Ill. 2000), *and aff'd*, 239 F.3d 876 (7th Cir. 2001). In general, where it is apparent that the defect cannot be corrected, the court may properly deny leave to amend, *e.g., Schroedel v. New York University Medical Center*, 885 F.Supp. 594, 600 n. 9 (S.D.N.Y.1995), or may dismiss the class allegations altogether. *See Mateo v. M/S KISO*, 805 F.Supp. 761, 773–74 (N.D.Cal. 1991); *In re Aiello*, 231 B.R. at 716–17.

In this proceeding, I find it inappropriate to afford Ms. Porter leave to amend her proposed class for a number of reasons. First, she has not requested such relief. Second, there is no reason to assume, in light of the cessation of business by NationsCredit some years ago and the limitations issues, that there could be a proposed class of debtors who would meet the numerosity and commonality requirements of Rule 23. Third, and perhaps most significant, Ms. Porter's individual claims in this proceeding will be dismissed for reasons set forth below.

If Ms. Porter can raise no individual claims in this proceeding, she cannot

be a named representative of any proposed class. *See In re Wiley,* 237 B.R. 677, 683 (Bankr.N.D.Ill.1999); *see also In re Knox,* 237 B.R. at 695–96 (debtor lacks standing to prosecute a class claim when her individual claim has already been determined). Thus, there would be no purpose served in permitting her to amend her proposed class. Nor would there be any legitimate purpose served in permitting another debtor individual (if one exists) to step forward as class representative in this proceeding. If such a debtor exists, that person may file similar litigation in his or her own bankruptcy case.

### B.

■ Two factors persuade me that the individual claims of Ms. Porter in this proceeding must be dismissed.

First, if one ignores the existence of the pending 2001 adversary proceeding, it is doubtful that jurisdiction exists over Ms. Porter's claims, given the timing of the filing of her complaint. She commenced this lawsuit in December 2002, after her chapter 13 plan was completed, after the chapter 13 trustee filed notice that his administration of the case was concluded, and after the entry of her chapter 13 discharge. For reasons I detailed in *In re Shuman,* 277 B.R. 638 (Bankr.E.D.Pa. 2001), her non-bankruptcy law claims would not be related to any pending bankruptcy case as of the time this lawsuit was filed, especially as to her claims against Protective Life.

■ While her earlier pending adversary proceeding may affect the jurisdictional analysis as to the NationsCredit defendants, as these defendants note, Ms. Porter has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir.

1977) (en banc); *accord, e.g., Tara M. v. City of Philadelphia,* 1998 WL 464910, at *2 (E.D.Pa.1998). "For an action to be deemed duplicative, there must be the same parties, or at least such as represent the same interest; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts; and the essential basis of the relief sought must be the same." *Tara M. v. City of Philadelphia,* 1998 WL 464910, at *2.

■ The power of a federal court to prevent duplicative litigation is intended "to foster judicial economy and the 'comprehensive disposition of litigation,' " *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (quoting *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.' " *Id.* (quoting *Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir. 1991)). If an action is duplicative of an earlier lawsuit, then a federal court has the discretion to take the most appropriate action to protect these various interests. "[A] court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Id.; accord Walton v. Eaton Corp.,* 563 F.2d at 70–71. In determining the best manner to address duplicative litigation, a "court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed. R. Civ. Proc. 15, and demand for trial by jury, Fed. R. Civ. Proc. 38." *Walton v. Eaton Corp.,* 563 F.2d at 71.

■ As just noted, when duplicative litigation is discovered, it is against the

second of the two lawsuits that judicial power will typically be directed. This is analogous to the "first-filed rule," which applies "[i]n all cases of federal concurrent jurisdiction" and provides that "the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver,* 9 Wheat. 532, 22 U.S. 532, 6 L.Ed. 152 (1824)), *cert. denied,* 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). That rule was recently described in these terms:

> Since its adoption in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941), the first-filed rule has been employed by the Third Circuit to enjoin, where appropriate, "the subsequent prosecution of 'similar cases ... in different federal district courts.'" *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988) (quoting *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America,* 651 F.2d 877, 887 n. 10 (3d Cir.1981)). The first-filed rule simply dictates that, "in cases of federal concurrent jurisdiction involving the same parties and issues, the court of first-filing must proceed to decide the matter." *Zelenkofske Axlerod[Axelrod] Consulting, L.L.C. v. Stevenson,* No. 99–CV–3508, 1999 WL 592399, at *2 (E.D.Pa.Aug.5, 1999) (citing *EEOC,* 850 F.2d at 971). Although the courts do have discretion in applying the first-filed rule, the Third Circuit has adopted a policy which requires the existence of unusual or exceptional circumstances before a court may choose to depart from the rule.

*Stone Creek Mechanical, Inc. v. Carnes Co., Inc.,* 2002 WL 31424390, at *2 (E.D.Pa.2002); *see also EEOC v. University of Pennsylvania,* 850 F.2d 969 (3d Cir. 1988), *aff'd,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).

Here, I agree with NationsCredit that Ms. Porter has no right to bring duplicative litigation against it in this bankruptcy court. This second lawsuit involves the same loan transaction, includes the same cause of action, and seeks similar relief as to that raised in the prior pending litigation. Initially, Ms. Porter sought to amend the 2001 proceeding to include claims now asserted in this 2002 litigation, but then withdrew her motion in favor of a second lawsuit. As noted above, though, she cannot use duplicative litigation to circumvent constraints upon amending litigation.

Given her duplicative litigation against NationsCredit, given that her claims against Protective Life were asserted after her plan was fully completed, given that Protective Life is not a creditor of Ms. Porter, and given that her plan did not refer to any litigation against that entity (nor did her bankruptcy schedules), I conclude that the individual claims raised by Ms. Porter in this putative class action litigation must be dismissed.

■ As also noted above, if Ms. Porter cannot assert individual claims in this proceeding, she cannot serve as a class representative. *See In re Wiley,* 237 B.R. at 683; *see also Robinson v. First National City Bank,* 482 F.Supp. 92 (S.D.N.Y.1979) (named class members could not represent the class when their individual claims had been resolved in a separate bankruptcy case); *In re Knox,* 237 B.R. at 695–96 (debtor lacks standing to prosecute a class claim when her individual claim has already been determined).

Accordingly, if the debtor cannot serve as class representative, and as it would be improper to afford another individual to be substituted as class representative in litigation brought in Ms. Porter's bankruptcy case, no purpose would be served by permitting the proposed class definition to be

modified. Moreover, as the dismissal of this proceeding for jurisdictional reasons would not prejudice the rights of Ms. Porter or the unnamed class members, that result is warranted. *See, e.g., Robinson v. First National City Bank*, 482 F.Supp. at 92.

## IV.

Finally, the plaintiff also contends that, even if I do not possess jurisdiction over the class claims, I should not dismiss them. Rather, she urges that this class proceeding should be transferred to the district court under the withdrawal of the reference provisions of 28 U.S.C. § 157(d). This argument, however, misconstrues the scope of § 157.

■ At the outset, bankruptcy courts have no power to refer or transfer proceedings to the district court:

> The bankruptcy court declines the movant's invitation to "refer or transfer" this matter to the district court, as there is no rule or statute which permits such a referral or transfer. The reference statute is a "one-way street" from the district court to the bankruptcy court. *See* 28 U.S.C. § 157(a). The district court, upon motion to that court or on its own motion, may withdraw this reference over this adversary proceeding, as it sees fit, 28 U.S.C. § 157(d), but the bankruptcy court has no statutory authority to send the case back to the district court.

*In re Biglari Import & Export, Inc.*, 142 B.R. 777, 780 (Bankr.W.D.Tex.1992); *accord, e.g., In re Kool, Mann, Coffee & Co.*, 234 B.R. 873, 878 (D.Vi.1999).

Beyond the procedural infirmity of the plaintiff's request, however, lies a more fundamental problem.

■ 28 U.S.C. § 157(a) establishes the proceedings which may originally be referred from the District Court to the Bankruptcy Court:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(d) establishes the power of the District Court to withdraw the reference previously made:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

■ This statutory language makes clear that the power of the district court to initially refer a proceeding is limited to those over which bankruptcy subject matter jurisdiction exists pursuant to section 1334(b). Thus, a district court may not properly refer to the bankruptcy court *all* civil proceedings over which it may have subject matter jurisdiction. Instead, such a referral is limited by § 1334(b) to cover only those proceedings that "arise under" Title 11 or "arise in" or "relate to" a bankruptcy case. *See, e.g., In re Williams*, 244 B.R. 858, 865–66 (S.D.Ga. 2000) ("The jurisdiction of bankruptcy courts, as § 157's terms make clear, is derivative: They can only exercise jurisdiction if that jurisdiction has been first granted to the district courts pursuant to 28 U.S.C. § 1334"), *aff'd sub nom. Williams v. Sears, Roebuck & Co.*, 34 Fed. Appx. 967 (11th Cir.2002) (Table); *In re Foundation for New Era Philanthropy*,

201 B.R. 382, 398 ("If a proceeding is unrelated to the bankruptcy case, the district court has no authority to refer it to a bankruptcy judge—even if the proceeding falls within some other federal jurisdictional grant"); *see also United States v. One Parcel of Real Property, Commonly Known as Star Route Box 1328, Glenwood, Washington County, Oregon,* 137 B.R. 802, 805 (D.Or.1992); *In re JMP–Newcor International, Inc.,* 225 B.R. 457, 460 (Bankr.N.D.Ill.1998)

■ It thus follows that, under section 157(d), the district court may only withdraw from the bankruptcy court the reference of those proceedings which were properly referred initially: *viz.,* those within the scope of section 1334(b).

Accordingly, whether or not the plaintiffs' class claims could have originally been filed in the district court under its federal question jurisdiction, 28 U.S.C. § 1331, the putative class claims could only be withdrawn from this court under section 157(d) if bankruptcy jurisdiction under § 1334 exists for those claims. For the reasons mentioned earlier, bankruptcy subject matter jurisdiction does not lie. Therefore, withdrawal of the reference under section 157(d) for the class claims would not be appropriate.

### V.

In sum, Ms. Porter is not an adequate representative of the class of plaintiffs which she has defined. Her individual claims are either duplicative of pending litigation or were raised too late to be related to her completed chapter 13 case. Furthermore, the class itself is defined so broadly that the claims of the unnamed members fall outside the scope of section 1334(b) jurisdiction.

In addition, there is no valid basis to allow an unnamed class member to substitute as the class representative and re-

strict the class claims to those within my jurisdictional orbit. And there is no statutory authority to refer this proceeding to the District Court.

Accordingly, an order shall be entered dismissing this proceeding, albeit without prejudice to the merits of the claims.